# Birdsall *versus* Richards.

A person seised of an interest in real estate which had been conveyed to him and three others for the purposes of a cemetery, conveyed the said interest and its proceeds to trustees, to receive and hold the same subject to the direction, control, and disposition of the said grantor during his natural life, and after his decease to such uses as he by his last will should direct and appoint; and in the absence of such will, for the use of such persons as would be entitled to his personal estate *in case of his intestacy.* The grantor subsequently made a will devising the said interest and income from it to certain trustees; and all the *rest, residue, and remainder* of his estate and effects, real and personal, he devised and bequeathed to his executors in trust for other purposes; afterwards by a codicil, he confirmed his will except so far as the same was altered and revoked by the codicil:

It was *held,* that the testator having an *estate* in the premises as well as a *power* over it, the residuary clause in his will carried the estate, and the will was an election to devise *as owner,* and not to appoint by virtue of the power: The revocation of the devise of the estate and the republication of the residuary clause in the will, indicated his intention that the property should fall into the residuary clause, and be received by the executors subject to its provisions.

This case came up from the Nisi Prius. It was a bill in equity, filed by Gideon Birdsall, and Palmyra his wife, and others, being of the half-blood to Nathan Dunn, deceased, for an account, &c., of moneys received by the defendants, Richards, Smith, and Brown, as trustees, from the interest of Nathan Dunn in the Laurel Hill Cemetery, on the ground that Nathan Dunn died intestate as to that interest.

It was stated in the bill, that Nathan Dunn, on the 26th February, 1836, purchased the Mansion House and tract of land called Laurel Hill, and afterwards, by indenture of May 30th, 1839, reciting that his object in purchasing the same was to appropriate it for the purpose of a cemetery; that a charter of incorporation had been granted to the Laurel Hill Cemetery Company, and the pur-

chase-money and all expenditures connected therewith, had been contributed in equal parts by the said Nathan Dunn, Benjamin W. Richards, John J. Smith, Jr., and Frederick Brown, conveyed the premises to George Campbell, *in trust,* to execute a convey-ance, in fee, to the said Nathan Dunn, Benjamin W. Richards, John J. Smith, Jr., and Frederick Brown, on the following trusts, that is to say: *First,* for the objects, intents, and purposes set forth in the charter of the Laurel Hill Cemetery Company, under and subject to the provisions of said charter, and to the by-laws, rules, and regulations of the said company. *Secondly,* To make deeds of conveyance to purchasers of rights of interments, and ex-clusive possession of lots. *Thirdly,* To apply all other moneys from time to time received, to the reimbursement of all advances, payments, expenses, and disbursements made or to be made by the said Nathan Dunn, Benjamin W. Richards, John J. Smith, Jr., and Frederick Brown. *Fourthly,* To receive, apply, and ap-propriate to the sole and exclusive use of the said Nathan Dunn, Benjamin W. Richards, John J. Smith, Jr., and Frederick Brown, their executors and administrators, in equal parts and proportions, as their absolute right and property, all the profits, benefits, and advantages that might arise from sales of the said rights of inter-ment, incidents and appurtenances, after full and entire reimburse-ment of all advances, payments, expenses, and disbursements afore-said; and *Fifthly,* after the foregoing trusts should be satisfied, to make a conveyance in fee simple to the said company of the said mansion-house, &c.

That the said George Campbell accordingly, by indenture bear-ing even date with the last recited conveyance, conveyed the pre-mises to the said Nathan Dunn, Benjamin W. Richards, John J. Smith, Jr., and Frederick Brown, on the trusts above mentioned.

That the said Nathan Dunn, afterwards, by deed dated March 9, 1841, conveyed to the said Richards, Smith, and Brown, all his equal fourth part of and in the right and interests, benefits, profits, proceeds, and advantages of, in, and belonging to the mansion-house and tract of land called Laurel Hill aforesaid, and of and in the sums of money which might be received from time to time from the sale and disposition of any parts or portions thereof, or of any rights of interment or otherwise therein, by the trustees of the Laurel Hill Cemetery Company, and in the proceeds thereof; and all the uses, trusts, and estates, legal and equitable, in possession, reversion, and remainder, vested or contingent, growing out of or connected with the same, to which the said Nathan Dunn might be in his own right, and not as trustee, entitled, and all interests or possibilities of interest connected therewith, In trust, to receive and hold the same, subject to the direction, order, control, and dis-position of the said Nathan Dunn, and to pay over the same quar-terly in each succeeding year, rendering a statement of the affairs

of the trust to him, for and during the term of his natural life; and after his decease, to such uses as he by his last will should direct and appoint; and in the absence of such last will, for the use of such persons as would be entitled to the personal estate of the said Nathan Dunn, in case of his intestacy, his or her heirs, executors, administrators, or assigns.

It was alleged in the bill, that the said Nathan Dunn died intestate as to his one-fourth interest in the Laurel Hill Cemetery, and that the same vested in his next of kin, according to the intestate laws of Pennsylvania.

It was further alleged, that the trustees had received a large sum of money, the proceeds of Nathan Dunn's one-fourth interest in the Laurel Hill Cemetery, which ought to be paid over to the complainants as next of kin. It was alleged that the domicil of Nathan Dunn was in Philadelphia, and that he died on the 19th September, 1844.

The said Nathan Dunn made a will, dated on the 7th March, 1840, whereby he devised the interest, dividends, and income which might proceed from his one-fourth interest in the Laurel Hill Cemetery, to the trustees of the Chinese Collection, to be applied and used by them as directed in the will.

It was further provided in the will as follows: "I desire and direct that all the property and estate, real and personal, which I may own or be in any way entitled to, at the time of my decease, shall be considered as fully disposed of by this will, whether it be hereafter acquired or now owned by me. All the rest, residue, and remainder of my estate and effects, real and personal, I give, devise, and bequeath to my executors, in trust, to convert the same into money, and to apply the same in such amounts and proportions, and to such charitable and literary institutions as they, my executors, may select and prefer."

By a codicil to this will, dated 13th July, 1841, the said Nathan Dunn revoked and made null and void the bequest contained in his will of his Chinese Collection, and all the trusts, directions, &c., growing out of the bequests of the Chinese Collection, and every part thereof. And in another provision in his said codicil, he provided as follows: "I hereby confirm my said will which bears date the 7th March, 1840, in all respects whatever, except so far as the same is altered and revoked by this codicil. And I do declare this codicil, and such parts of my said will as are not hereby altered and revoked, to be my true and only last will and testament."

Brown and Collins were appointed executors in the will.

Separate answers by the trustees and executors were filed. The receipt by the trustees of moneys from Dunn's one-fourth interest in the Cemetery was admitted, but it was alleged in their answer that they had been advised that the revocation by the codicil of the bequest of the Chinese Collection did not affect or alter the bequest

[Birdsall *v.* Richards.]

of *the residuary estate* to the executors, but that such residuary bequest included the testator's interest in the Cemetery, and that the same passed to the executors upon the trusts therein expressed.

COULTER, J., in the *Nisi Prius,* declared his opinion to be that the property in question ,passed to the executors by the residuary clause in the will, *which will* operated and must be construed as it stood at the date of the last codicil; at which time the specific disposition of the property was revoked, and it was governed by the codicil which revived the residuary clause as to this property, and which declared that the will, except the parts revoked by the codicil, shall stand as the will of the testator.

*McCall* was concerned for complainants.—It was contended—: 1. That Dunn had by his deed of trust of 9th March, 1841, *merely a power of appointment* over the Laurel Hill estate *by will.* 2. That neither by his will of 7th March, 1840, nor by the codicil of 13th July, 1841, was there a due execution of such .power. 3. That on such failure of execution, under the deed of trust of 9th March, 1841, his next of kin .of the whole and half blood were equally entitled: *Intestate Act of 8th April,* 1833, *sec.* 5. As to the *first* point: As the absolute owner of the estate, Nathan Dunn had the right to settle it as he pleased. By his deed of 9th March, 1841, he conveyed the fee to the trustees, and reserved only a power of appointment to himself; and he could not afterwards exercise any control over it, *except through the power reserved:* 9 *Ser. & R.* 179, Slifer *v.* Beates.

As to the execution of a power, reference was made to 2 *Sug.* 94; 9 *Ser. & R.* 181; 4 *Kent* 334–5, and note *a;* 2 *Bro. Ch. C.* 297; 5 *B. & C.* 720, Doe *v.* Roake; 1 *Dow. N. S.* 437, Same case; 2 *Bing.* 497; 4 *Sim.* 364; 1 *Sug. on Powers* 385–7; 2 *Mer.* 533; 18 *Ves. jr.* 168; 8 *Ves.* 588; 13 *Id.* 445; 1 *Swanston* 66; 3 *Sim.* 275; 3 *Johns. C. C.* 551; *Ram. on Wills* 208, 224.

*Law,* for some of the respondents, to the same effect.

*Meredith* and *Biddle,* for the trustees and executors.—It was contended, that Dunn died *testate* as to the property in question, and that it fell into his residuary estate. The testator declared his will to be, that all the property owned by him at his decease should be disposed of; and he made a residuary devise and bequest of all not expressly given away. When he revoked the bequest of the Chinese Collection, and, by necessary implication that of the Laurel Hill property, he republished the will in terms, and with it, of course, the residuary devise or bequest. That the will speaks *from the date of the codicil,* and the Laurel Hill property not being expressly disposed of, passed to the executors under the residuary clause: 10 *Barn. & Cress.* 895, Doe *v.* Marchant; 6 *Man. & Gran.* 813; 46 *Eng. Com. Law* 813; 4 *Barr*

376, Coale *v.* Smith; Clere's case, 6 *Rep.* 17 *b*, cited in 1 *Sug. on Powers* 105; 1 *Sug.* 378; *Id.* 401–410.

The opinion of the Court was delivered April 12, 1852, by

LEWIS, J.—In the great leading case of Sir Edward Clere, 6 *Co.* 17, it was held that, "in the case of a feoffment to the use of such person as the feoffor should by last will appoint, the feoffor was seised of a qualified fee, and the use vested in him till declaration or limitation be made according to the power; and that if, in such case, the feoffor by his will limit estates *according to his power*, reserved to him on his feoffment, then the estates shall take effect *by force of the feoffment*, and the use is directed by the will, so that in such case the use is but declaratory; but if in such case the feoffor by his will devises the land itself, as owner thereof, without any reference to his power, then it shall *pass by the will*, for the testator had an *estate*, devisable in him, and *power* also to limit an use; and he had an election to pursue which he would; and a devise of the land itself, without reference to the power, was an election to devise as owner, and not to appoint by virtue of the power:" 6 *Co.* 17. We are not inclined to disregard the principles established in this case. They were settled upon great consideration, and we do not think that they have been overthrown by the numerous decisions which have since taken place.

In the case before us, it is plain that the deed from Nathan Dunn of the 9th March, 1841, was but a conveyance in trust for his own use. The proceeds were to be paid over to him quarterly as long as he lived; and if he died intestate, they were to go to such persons as would be entitled to his personal estate in case of intestacy; but if he made a will, they were to go to such uses as he by his last will should direct and appoint. This is precisely the estate and control which the law gives to every one in and over his personal estate. Conceding that he had a *power* as well as an *estate*, the residuary clause in his will is sufficiently comprehensive to carry the estate, and the will is an election to devise as owner, and not to appoint by virtue of the power. The revocation of the devise of this particular estate, and the republication of the residuary clause in his will, was an indication of his intention that the property in question should fall into the residuary clause. It is no new principle that a man shall be presumed to intend to accomplish all the natural and necessary consequences of his acts.

The decree of the Court of Nisi Prius dismissing the bill is affirmed.

Decree affirmed.