EQUITABLE TRUST COMPANY, a corporation of the State of Delaware, (formerly The Equitable Guarantee and Trust Company) Trustee for Mary S. Derrickson under a trust agreement dated April 15, 1907,

*vs.*

JOHN PASCHALL, EDWARD MERRILL PASCHALL, HENRY MORRIS PASCHALL, LUCRETIA D. FREDERICK and EQUITABLE TRUST COMPANY, Trustee under the will of Mary S. Derrickson, deceased.

*New Castle, Nov. 23, 1921.*

Where testatrix had created a trust fund, the income to be paid to herself during her life, and the fund to be distributed as she should direct by will or to her distributees under the intestate laws, her will must be construed with the view that she regarded the trust as continuing, whether or not it was revocable, if she had made no attempt to revoke it.

A testatrix who has an estate in the fund which she also has the power to dispose of by will can elect whether to dispose of the fund by gift of the estate or by exercise of the power.

The creator of a trust for the payment of the income to herself and the distribution of the fund at her death as she might appoint by will or to her distributees under the intestate laws had thereafter no estate in the fund, so that the residuary clause in her will did not operate to pass the fund.

The general rule is that the failure to refer to the power or to its subject matter, either expressly or by implication, always indicates a refusal to exercise the power.

The question whether a power has been exercised is a question of intention, to be determined in accordance with well-defined rules laid down for the ascertaining of such intention.

The exercise of a power reserved by the creator of a trust is governed by the same rules as govern the exercise of a power by the donee from another, and the general residuary clause in the will of the holder of the power is not an exercise thereof.

BILL IN THE NATURE OF INTERPLEADER AND FOR INSTRUCTIONS TO TRUSTEE. On April 15, 1907, Mary S. Derrickson, delivered to the complainant two thousand dollars, the same to be held in trust to invest the same and pay the income therefrom to her for and during the term of her natural life, and at and immediately after her death to "pay over and distribute the said principal sum to such person or persons as she shall by her last will and testament direct and appoint, and in default of such last will and testament, to such person or persons as shall be entitled to receive the same under the intestate laws of the State of Delaware."

Mary S. Derrickson died on June 11, 1920, having first made and published her last will and testament dated July 22, 1924, to which were added two codicils dated respectively September 29, 1914, and February 16, 1916. Upon the death of the testatrix said will and codicils were duly probated.

By said will and codicils the testatrix made bequests of numerous specific articles and of two pecuniary legacies; and then provided that "all the rest, residue and remainder of my estate, of whatsoever kind and wheresoever situate, I direct shall be converted into cash," and the cash so obtained was bequeathed to a trustee upon certain specified trusts.

The complainant, in addition to being trustee of the fund of two thousand dollars, is also named as executor of the will.

The bill is filed by the complainant as trustee of the two thousand dollars fund, and seeks the instruction of the court as to the disposition of said fund. All parties interested in the fund are made defendants and have been brought into court.

*Albert F. Polk*, for the complainant.

*Richard S. Rodney*, for the defendants.

THE CHANCELLOR. The question is, whether the trust fund of two thousand dollars goes to the distributees of Mary S. Der

rickson under the intestate laws of Delaware by virtue of the trust instrument, or to the trustees under the will by virtue of the residuary clause.

Mrs. Derrickson in creating the trust in the two thousand dollars fund, reserved to herself the annual income during life and a power to appoint by her last will and testament, and in default of such last will and testament directed that the fund be paid to her distributees under the intestate laws. She thus chose to limit and restrict the general right of dominion over the fund which theretofore she had possessed. Whether she might have revoked the trust arrangement, I need not consider, for the fact is that she did not attempt to do so. Whatever might have been her right as regards revocation, she died leaving the trust arrangement in the same condition in which she had chosen originally to place it. I must, therefore, conclude that her will is to be construed with the thought in mind that the trust was regarded by her as continuing to exist in all its terms.

If, therefore, the will is to operate upon the trust fund, it must be upon the theory that it may do so solely as an exercise of the power which she had reserved unto herself in creating the trust.

The only portion of the will that may in any wise be said to amount to an exercise of the power is that portion constituting the general residuary clause.

This clause, however, phrased as it is, cannot, under the authority of *Lane v. Lane's Adm'r.*, 4 *Pennewill*, 368, 55 *Atl.* 184, 64 *L. R. A.* 849, 103 *Am. St. Rep.* 122, decided by the Supreme Court of this state, be said to operate as a valid exercise of the power to appoint; for none of the tests laid down in that case for ascertaining the intent to exercise the power can be found to be present. This is so, unless there is merit in the contention that the circumstance in this case, to-wit, that the power here was reserved by the owner, whereas in the *Lane Case* the power was conferred on a stranger, may serve to differentiate the two cases in the principle to be applied.

In support of this contention the case of *Birdsall v. Richards*, 18 *Pa.* 256, is cited. That case appears to hold that a trust arrangement similar to that here involved leaves in the owner of the property an estate as well as a power, and that, accordingly

a residuary clause though inoperative as an exercise of the power is nevertheless good as a disposal of the estate. The Pennsylvania court relies on *Sir Ewdard Clere's Case*, 6 *Co.* 17, for the proposition that where there is both an estate and a power in the same individual, such individual may elect as to whether he will dispose under the power or devise as owner. That he may do so, is, I take it, an indisputable proposition. The difficulty, however, that I find with *Birdsall v. Richards* is in accepting the view that the testator in that case did as a matter of law have a disposable estate as well as a power.

The case now before me is quite similar to *Birdsall v. Richards*. In one particular, however, there is a material distinction which lies in the fact that in the *Birdsall Case* there was an exercise of the power, and later a revocation of the same by codicil and a cotemporaneous republication of the residuary clause. This feature was emphasized by the justice who wrote the opinion.

It may be said that *Mory v. Michael*, 18 *Md.* 227, upon the proposition that, in such trust arrangements as are here involved, there is a disposable interest as well as a power, would appear to be in conflict with *Birdsall v. Richards, supra.* I am aware that the the limitation to child or children in the *Mory Case* may be a feature which would remove its apparent conflict with the *Birdsall Case* in Pennsylvania.

However this may be, I am of the opinion that Mrs. Derrickson, when she placed the two thousand dollars fund in trust and left it there undisturbed, retained no interest in it except within the terms of the trust attaching to it. The trust continuing, she had, aside from the power to appoint, no disposable estate in the corpus. If in addition to the power to appoint by will, she also had an estate which she could bequeath as her property (as is contended), it follows that if she died insolvent her creditors could take the fund and thus defeat the limitation to the distributees. And this would be so notwithstanding the fund was intended to be paid by the trustee, not to her executors or administrators, but direct to her distributees.

Again, supposing she had an estate in the fund as distinct from the power over it, as is contended, then, if she had, as a matter of fact, desired to make a will such as she did, and, at the

same time, had not desired to exercise the power to appoint, preferring that the fund should go as provided in the trust agreement, she would, in order to accomplish her purpose, have been required to expressly deny in her will that she meant her residuary clause to operate upon the power. This would necessitate the laying down of a rule that, in such cases as this, the possessor of the power must, if he elect not to exercise it, expressly declare a refusal to exercise it. This would constitute a rule quite the reverse of the general rule universally held applicable, viz.: that failure to refer to the power, or its subject matter, expressly, or by implication, always indicates a refusal to exercise it.

Moreover, I am unable to see how, if there was an estate in the fund as well as a power to appoint, the limitation to appointees under a will, or to the distributees under the intestate laws, could become effective *qua* such in any event, for such estate or property right would be a part of the estate whether the deceased died testate or intestate. The limitations to appointees or to disdistributees would, therefore, have to be held pure surplusage. At least such in substance would be the effect, for if there was a will containing a general bequest, it would go to the executor for the benefit of the persons named by the will without the aid of any power, and if no such will, it would go to the adminstrator for the benefit of the distributees under the intestate laws without the aid of the limitation contained in the trust arrangement—subject in either case to the rights of creditors. If such was the intent in employing the language used, I am at a loss to understand why such a cumbersome method of expressing it should have been employed. Such, I think, was not the intent. Rather, it is more reasonable to hold that in creating the trust, Mrs. Derrickson divested herself of all rights in the fund except as the terms of the trust saved to her; and that she did not retain an interest or estate disposable of by her aside from the trust arrangement.

The Pennsylvania case of *Birdsall v. Richards*, therefore, if it is to be regarded as holding that in such case as is now before me there is a disposable estate as well as a power, does not make a favorable appeal to my judgment.

The question of whether a power has been exercised, is a question of intention. Courts have, in adjudications extend-

ing over a long period of time, laid down certain well defined rules for the ascertaining of that intention. It is suggested that where the power is a reserved one, that is to say, is in the individual in whom the right of property resided at the time of the creation of the power, a different rule is to be observed in the ascertainment of the intent from that which is to be observed where the donee of the power is a stranger to the property. This thought is urged because, it is said, where the power is reserved by the owner, such owner must be considered as having actual knowledge of its existence, and therefore no express reference to it is necessary, whereas, if the donee of the power is a stranger there is no presumption that he was aware of its existence, except as he may disclose his knowledge by a reference to it in the executing instrument, and that therefore, in such latter case there ought to be a reference to the power.

I find no authority sustaining this view. The argument appears to be founded on a false premise in that it assumes that the question of whether a power has been exercised is to be determined by the question of whether the possessor of the power had knowledge of its existence in him. I do not think that such is the philosophy underlying the rules dealing with the subject. A power is optional. It may be exercised or it may not be. A party may know he has the power and yet elect not to use it. The question in each case is, whether he intended to act upon it. And this question of intention is not determined in the affirmative by simply showing that the possessor of the power knew that it was vested in him. To hold otherwise would tend to disturb all the rules which courts have for generations erected for guidance in disposing of questions of the kind now before me.

I hold that with respect to the two thousand dollars fund mentioned in the trust agreement of April 15, 1907, there was no disposable property interest or estate in Mary S. Derrickson, which she could dispose of by her will; that if she by her will desired to give it to any particular person or individual, she should have done so by way of appointment in accordance with the trust arrangement. The residuary clause, therefore, in view of this holding, did not carry any interest in the way of an estate in this fund.

I further hold that the residuary clause was not an exercise of the power to appoint under the terms of the trust arrangement, taking the view that the principle laid down in *Lane v. Lane's Adm'r.*, *supra*, is applicable to this case.

I also hold that the two thousand dollars fund should be paid by the trustee to such person or persons as are entitled to receive the same as distributees of Mary S. Derrickson under the intestate laws of the state of Delaware.

Let a decree be prepared in accordance with this opinion.