243 S.W.2d 310 (1951)
TAYLER
v.
TAYLER.
No. 42316.
Supreme Court of Missouri, Division No. 1.
November 12, 1951.
*311 Errol Joyce, Brookfield, Walter A. Raymond, Kansas City, for appellant.
*312 Harry L. Porter, Marceline, for respondent.
COIL, Commissioner.
Plaintiff-respondent brought suit to quiet title to certain improved real estate in Marceline, Linn County, Missouri, averring that he owned the fee simple title; that defendant-appellant asserted some title or interest in the property, and praying that title be determined and for other proper relief.
Defendant-appellant by answer denied that respondent was the unconditional owner in fee simple and, by a pleading denominated "cross-action," averred that she was entitled to a life estate in the property, and prayed that the court so decree; and further prayed that respondent be enjoined from conveying the property, and for such further relief as to the court should seem proper.
The cause was tried to the court without the aid of a jury.
We have jurisdiction under Sec. 3, Art. V of the Missouri Constitution because title to real estate is directly involved.
Appellant contends and respondent does not dispute that this case involves equitable issues, and should be considered here as a suit in equity. We deem it unnecessary to make a determination of whether the pleadings, or the pleadings if considered amended to conform to the proof, Mo.R.S.1949, § 509.500, presented only issues at law or equitable issues as well. Whether the review is of a suit in equity or by virtue of the provisions of Mo.R.S.1949, § 510.310, is not decisive in our determination of this case.
E. W. Tayler, 79 years of age at the time of his death on July 2, 1948, by warranty deed dated August 29, 1945, conveyed fee simple title to the real estate involved to his son, respondent Willard L. Tayler. The deed contained no reservations or exceptions of any kind. Simultaneously with the execution of the deed, the grantor-father entered into a contract with the grantee-son and grantee's wife Alice Tayler. This contract (hereinafter referred to as Aug. '45 contract) was not put in evidence and is not before us, although its availability at time of trial is shown by the record. Further references to this Aug. '45 contract will be made but suffice to note here that it is agreed that it contained provisions whereby the grantor in the warranty deed was to have the use and benefit of the property during his life-time, and whereby respondent and wife would convey the property at the time and in the manner directed by the grantor.
On January 27, 1946, E. W. Tayler married appellant. On July 24, 1947, a certain writing titled "Real Estate Contract" (hereinafter referred to as July '47 contract) was prepared at the request of E. W. Tayler, executed by him and appellant, and mailed in duplicate to respondent at his home in Chicago, Illinois. Accompanying it was a letter from the party who prepared the July '47 contract. The letter contained the request of E. W. Tayler that the instrument be signed by respondent and his wife, and one duplicate original returned to E. W. Tayler.
The July '47 contract in full:

Real Estate Contract
"This Contract and Agreement made and entered into this 24th day of July, 1947, by and between E. W. Tayler and Faye Wilmot Tayler, his wife, first parties, and Willard L. Tayler and Olive Tayler, his wife second parties, Witnesseth:
"Whereas, E. W. Tayler, one of the first parties, has heretofore, conveyed to Willard L. Tayler, one of the second parties, by General Warranty Deed the title to all of Lots Numbered Four (4) and Five (5) in Block Numbered One Hundred Twenty-five (125), and all of Lots Seventeen (17), Eighteen (18) and Nineteen (19) in Block Numbered One Hundred Forty (140), all in the City of Marceline, according to the original plat thereof, in Linn County Missouri;
"And Whereas, said E. W. Tayler in said conveyance understood and as provided by contract dated August 29th, 1945, signed and acknowledged by the parties October 16th, 1945, before Ewd. A. Birkmeier, Notary Public for Cook County, Illinois, retained *313 certain benefits and interests in said property, among which were the right to the use and benefit of said property during his lifetime as he might see fit, and said contract obligating second parties to convey said property in any manner E. W. Tayler might direct;
"And Whereas, it is now desired that the title of said property be settled, in consideration of the mutual covenants herein contained it is hereby agreed;
"1. First parties shall have the right to the use, occupancy and benefit, rentals and income from said properties during the lifetime of the survivor; that during said period of use first parties or the survivor, shall maintain and keep in repair said properties, pay taxes and insurance and incidental current expenses thereof.
"2. The right of said E. W. Tayler heretofore reserved and expressed in the contract above mentioned to dispose of said property during his lifetime, and the obligation of second parties to convey title to said property as might be directed by him, is released, canceled and for naught held; the granting of a lifetime interest to first parties and to the survivor being here considered as full and complete exercise of that reservation and the power therein given.
"3. Upon death of the survivor of the first parties title to said properties shall be absolute in second party Willard L. Tayler.
"4. First party Faye Wilmot Tayler does hereby convey and release to second parties all of her interest by way of dower in and to said real estate, in consideration of the lifetime interest herein secured to her."
Respondent's evidence tended to prove that the foregoing July '47 contract was never executed by either himself or wife but was returned to E. W. Tayler at his request approximately a month after its receipt by respondent. Appellant adduced evidence to the effect that the July '47 contract was signed by respondent and his wife and returned to E. W. Tayler. We shall later refer in more detail to this conflicting evidence.
The record does not show that any deed conveying any interest in this property was ever executed by respondent.
Appellant contends that the July '47 contract constituted a valid exercise of the power of appointment which E. W. Tayler had by virtue of the Aug. '45 contract that, while the evidence shows that the July '47 contract was executed by respondent, whether it was executed by respondent and wife is immaterial to the right of appellant to a life estate in the property in question, because the exercise of the power of appointment by E. W. Tayler resulted in a completely executed gift of a life estate to appellant.
The issues are: first, whether the evidence establishes that the July '47 contract was executed by respondent, and second, if the first issue is determined adversely to appellant, whether, irrespective of no execution by respondent, the July '47 contract constituted the exercise by E. W. Tayler of his power of appointment by virtue of which respondent would be obligated in equity to convey a life estate to appellant.
The trial court made no findings of fact as such. The decree adjudged plaintiff the owner in fee simple and that appellant had no right, title, or claim. The trial court necessarily found from the evidence that the July '47 contract was not executed by respondent. We are not bound by this finding of the trial court, but we accord due deference to it, especially where the determination was made upon conflicting evidence. Middelton v. Reece, Mo.Sup., 236 S.W.2d 335, 341[2].
A review of the evidence on the issue of execution of the July '47 contract is desirable. It is fairly inferable from the evidence that, subsequent to the execution and delivery of the warranty deed and the execution of the Aug. '45 contract, some discussion arose between E. W. Tayler and respondent with reference to a possible sale of at least a portion of the property covered by the deed. On March 3, 1947, respondent wrote his father a letter, one paragraph of which said: *314 "When & if you decide to sell the Hotel let me know and we can figure out the best way to handle the dealTransfer it back to your name if you wish."
On April 11, 1947, apparently in answer to respondent's letter of March 3, E. W. Tayler wrote his son, one paragraph of the letter being as follows: "Willard, In a recent letter you suggested that if I would like, you would deed the Hotel property back to me. No, Willard, I would not want you to do that but would rather you would give me a new Real Estate contract, similar to the one I now hold, with slight changes providing that Faye shall enjoin the same privilegrs with the property that are assigned to me. You no doubt realize that under present conditions, if I should pass on, Faye would be left with no means of support, and of course I do not want that to happen, But I do want you to have the property when we are through with it, and I think a new contract would be more satisfactory than deeding the property back to me. Please give me your opinion and desire in the matter. I do not think any thing will result fron the inquiry I had from Kansas City some time agr in regard to selling the Hotel property as I have heard nothing more from them." Respondent testified that he ignored this letter and that his father knew that he, respondent, opposed any conveyance to appellant.
On July 24, 1947, appellant, at the request of her husband, then in the hospital, called Judge G. Derk Green, Circuit Judge of the 12th Judicial Circuit, stating that E. W. Tayler wanted to see him. That day Judge Green visited and talked with E. W. Tayler in the hospital. He testified concerning his conversation:
"He told me that he had this contract and had deeded the property to Willard, produced that paper and showed it to me, he said he wanted to change that to make it so Mrs. Tayler, that is Mrs. Faye Tayler would have the right to use it for life and wanted me to prepare some instrument that would make the change. I told him at that time I wasn't in the practice, I didn't do those things, I suggested that he get someone, pick some lawyer he wanted, and and have it prepared. He said there wasn't anyone in Marceline, didn't think he had time to wait for someone from another town, then I told him I would write it up just as a friendly matter and I took those papers and did write up this contract, what I call a contract, for signature by him and Mrs. Tayler and by Willard and his wife. * * * He told me at that time he had been thinking about it, it isn't a matter of thinking of it just at this time he said, and went ahead and stated it was for the reason she didn't have sufficient means, she didn't have anything to bring in any income for herself and he wanted her provided for."
Judge Green had the Aug. '45 contract before him when he prepared the July '47 contract but did not have the deed. The July '47 contract, together with a letter of transmittal addressed to respondent Willard Tayler, also prepared by Judge Green, was returned to E. W. Tayler and appellant. They read the contract and mailed the letter and the July '47 contract to respondent. The letter in part:
"Yesterday, your father sent word to me that he wanted to talk with me and I went to the Hospital to see him. He showed me the contract signed by you and him with reference to the title to the business property here and said that he wanted to make a change to provide that Mrs. Tayler should have the use of the property during her lifetime; also, to provide that no other change could be made in the title and that it would pass to you upon their deaths.
"I am not engaged in law practice now, but felt that I could not refuse to be of any possible assistance to him, so I wrote up another contract in line with his wishes. He then asked that I write to you to explain it and enclose the contract for execution by you and your wife. It is enclosed in duplicate and he asks that you and your wife sign before a Notary Public and return one copy to him."
Respondent testified that upon receipt of the July '47 contract he placed both copies in his desk at the Edison Company in *315 Chicago where he was employed; that he wrote to his father on August 1, 1947, acknowledging receipt of the instrument and stating that he wanted to study it awhile and think about it; that the copies were never signed by him or his wife; that he returned one or both copies to his father in early September, 1947, as requested in a letter dated August 28, 1947 from E. W. Tayler, which said in part: "Willard please return the papers I sent you some time agoDont remember what it is but dont think it is what we want. I was sick when Judge Green wrote it for me. We will try and fix things so they will be satisfactory, * * *." Respondent further testified that he had never again seen the July '47 contract; that he had no further correspondence concerning it, but had discussed the matter further with his father subsequent to the return of the papers (apparently in October 1947 when appellant and E. W. Tayler visited respondent in Chicago). The details of the discussion were excluded on objection of appellant.
Judge Green further testified that sometime subsequent to July 24, 1947, and probably three to six weeks thereafter, he saw E. W. Tayler and appellant and inquired whether Willard (respondent) had signed and returned the July '47 contract; that E. W. Tayler said yes, it had been signed before Willard's sister-in-law, a notary in Chicago.
Appellant testified that while her husband was still in the hospital she took to him an envelope addressed to him and from which he took the July '47 contract; that he showed it to her and that it had been signed by respondent and his wife; that E. W. Tayler kept the contract and she didn't know what he did with it. Appellant further testified that when she and respondent, respondent's wife, and a representative of the bank at Marceline examined the contents of E. W. Tayler's safe deposit box, the July '47 contract, duly executed by respondent and his wife, was among the papers in the box; that she took possession of it; that she rented a smaller box in the bank at the time and placed some of her personal property which had been in E. W. Tayler's safe deposit box in her new deposit box, but put the July '47 contract in her pocketbook for later examination; that respondent, his wife and two children were at her home for lunch that day and thereafter until they left for Chicago the next morning; that she, appellant, was there with her daughter; that she placed her pocketbook in a certain bureau drawer in the dining room; that when lunch had been completed, she obtained her pocketbook, went upstairs about 3 p. m. and discovered that the July '47 contract was missing. She said nothing about it to respondent Willard Tayler, but did return to the bank to look for it the next morning.
Mr. R. E. Trader, president of the Marceline State Bank, present when the deposit box of E. W. Tayler was opened, observed closely the papers which were removed from the box. He saw no paper which might have been the July '47 contract.
Alice Tayler, respondent's wife, testified that she did not sign the July '47 contract; that she was present when the safe deposit box was opened and observed closely, and that the July '47 contract was not among the contents of the box.
No copy of the July '47 contract containing any signatures was in evidence. An unsigned copy was available and has been set forth heretofore.
On this sharply conflicting evidence, the trial chancellor necessarily found that the instrument of July 24, 1947, had not been executed by respondent or wife. The trial chancellor had an opportunity to observe the various witnesses and to hear their testimony as it was given by them from the witness stand. Because this was purely a fact issue and depended to a great degree on oral testimony of these witnesses, we should be inclined without more to defer to the finding of the trial court on this issue. The testimony of respondent, however, it seems to us, is corroborated to the point of complete credibility by the letter, the original of which was introduced in evidence, from E. W. Tayler to respondent, dated August 28, 1947. In this letter, as heretofore noted, E. W. Tayler requested *316 that the papers (obviously referring to the July '47 contract) be returned; that he, E. W. Tayler, did not think the papers as forwarded were what was wanted and suggested that a new attempt would be made to make a satisfactory arrangement. It is not conceivable that E. W. Tayler would have written this letter if he had theretofore received the July '47 contract in any form, signed or unsigned, from his son. It is certainly not likely that, in response to the letter of August 28, respondent would have returned the July '47 contract in executed form. Especially is this true when respondent's opposition to any arrangement whereby appellant would receive any interest in the property is considered. On the contrary, it is fairly certain, it seems to us, that respondent, in response to this letter, would, as he said he did do, return the July '47 contract unexecuted. We reach the same conclusion from the evidence in the record as that reached by the trial judge, and find and so conclude that respondent did not execute the July '47 contract.
The decisive question remains: does the July '47 contract, admittedly executed by E. W. Tayler and his wife (appellant), constitute an exercise of the power in E. W. Tayler by virtue of the Aug. '45 contract, and thereby constitute a direction to respondent to convey a life estate in the property to E. W. Tayler and his wife, the appellant?
As we have heretofore mentioned, the Aug. '45 contract was not put in evidence and is not before us. It is difficult and, in many instances perhaps impossible, to determine whether a certain action by a donee of a power constitutes an exercise of that power without considering all the terms and provisions of the instrument creating the power. The power created by a particular instrument may be a general or a limited power, the manner of its execution may be specified and limited. Grace v. Perry, 197 Mo. 550, 567, 95 S.W. 875, 879. "There cannot be a valid exercise of the power except for the purpose intended by the donor as shown by the instrument creating the power." Citizens' Bank of Lancaster v. Foglesong, 326 Mo. 581, 589, 31 S.W.2d 778, 781 [2-5]. Many other vital questions concerning the exact nature of the power, the manner of its execution, and the intention of the donor of the power may be determined only by an examination of the instrument creating it. True, certain admissions are made by respondent concerning the effect of the Aug. '45 contract. Likewise, reference to the Aug. '45 contract is made in the July '47 contract. Even so, no accurate determination of the question here involved could well be made without an examination of the entire Aug. '45 contract.
But the parties to this controversy have agreed that the Aug. '45 contract gave (in one form or another) to E. W. Tayler a right to the use and benefit of the property during his lifetime and some right to designate a grantee of the property or of at least some estate in the property. We shall, therefore, for the purposes of this case, make certain assumptions concerning the Aug. '45 contract, assumptions which place appellant in the most favorable position possible. We therefore assume that simultaneously with the execution or delivery of the warranty deed to respondent, respondent and his wife entered into a contract with E. W. Tayler by which contract it was agreed that E. W. Tayler would have a life estate in the property. We further assume that by the contract a general, unlimited power was given E. W. Tayler to designate at any time and by any means he chose a person or persons to receive a title of any kind to all or any part of the property involved; and finally that respondent and his wife were obligated to forthwith convey to the person or persons so designated the estate or interest as directed by E. W. Tayler. Making these assumptions, the conclusion follows that upon delivery of the warranty deed and execution of the Aug. '45 contract the fee simple title to the property in question was in respondent Willard Tayler, subject to an equitable life estate in E. W. Tayler, with full and unlimited power in E. W. Tayler to require and enforce in equity any conveyance by respondent which E. W. Tayler might request.
*317 Whether an instrument executed by a donee of a power operates as an exercise of that power depends upon the intention of the donee. Bolin v. Harston, Mo. Sup., 260 S.W. 65, 66[1, 2]; 72 C.J.S., Powers, § 40a, page 439; Equitable Trust Co. v. Paschall, 13 Del.Ch. 87, 92, 115 A. 356, 358[5, 6]; Union & New Haven Trust Co. v. Bartlett, 99 Conn. 245, 253, 122 A. 105, 107-108. It should be noted here that the donee of the power and the grantor of the real estate and, in effect, the donor of the power are the same person. Not a usual situation, but one which is governed by the same rules as though the donor and the donee were different persons. Equitable Trust Co. v. Paschall, supra.
The July '47 contract is ambiguous. To determine the intention of the donee of the power in this case, E. W. Tayler, and in the absence of the instrument creating the power, we look to the terms of the instrument which it is claimed constitutes an exercise of the power, to the circumstances of the parties, and to any proper evidence which may shed light upon the intention of E. W. Tayler.
The evidence shows that respondent's mother died in 1944 when his father, E. W. Tayler, was 75 years of age; that E. W. Tayler and appellant were married on January 27, 1946, but their plans for marriage had been made as early as August 1945, certainly prior to the delivery of the warranty deed by E. W. Tayler to respondent in October 1945. The evidence further shows (without objection) that there was an oral understanding between E. W. Tayler and his son that E. W. Tayler would never exercise the power given him in the Aug. '45 contract in any way which was not agreeable to respondent. We here point out that the importance we attach to this oral understanding is not based upon any theory that any oral understanding had at the time of the execution of the contract of August 29, 1945, would or could vary the terms of that instrument, but because that understanding, as hereinafter noted, is important in determining the intention of E. W. Tayler at the time he executed the instrument on July 24, 1947. The correspondence heretofore in part set forth between E. W. Tayler and his son indicates that while the father wished to arrange it so that his wife (appellant) would have a life estate in the property, he did not want to do anything with reference to the property that was not entirely satisfactory to his son. This attitude on the part of the father, in view of the cordial relationship that obviously existed between father and son, is most understandable.
Turning now to the July '47 contract. The instrument is titled "Real Estate Contract" (our emphasis); it makes E. W. Tayler and appellant parties of the first part, and respondent and his wife second parties; it recites the fact of the conveyance by E. W. Tayler to his son by warranty deed; it refers to the Aug. '45 contract and specifically to the part thereof obligating respondent and his wife to convey property in any manner E. W. Tayler might direct; it then recites a desire (which could only refer to a mutual desire of parties of the first part and parties of the second part) that the title to the property be settled; it then provides that it is agreed (obviously among all the parties named) in effect that E. W. Tayler and his wife should have a life estate in the property during the lifetime of the survivor, that the power of E. W. Tayler, contained in the Aug. '45 contract, should no longer exist in consideration of the agreement of second parties to grant a life estate to first parties; it then provides that, upon the death of the survivor of the first parties, the title in fee simple should be in respondent; and finally contains the provision that appellant would release any dower in said real estate.
We have concluded that the only reasonable construction of the instrument as a whole is that E. W. Tayler, despite his power to designate himself and his wife as grantees of a life estate in the property upon which designation respondent would be obligated to convey a life estate to them, did not desire to or intend to exercise this power except or until he obtained the agreement of his son that the proposed exercise was satisfactory. He desired to, not because he was bound to but because he wanted to, respect the desires and wishes of his son and to make an arrangement respecting *318 the property satisfactory to his son. The July '47 contract was, in effect, an attempt by the father to agree with the son that if the son and his wife would agree to convey a life estate to E. W. Tayler and appellant, then E. W. Tayler would consider such conveyance a full exercise of his power contained in the Aug. '45 contract. This conclusion is borne out by the very terms of the contract. The contract recited things to be agreed upon among the parties, such agreement to be evidenced by execution. This negatives any idea that the instrument was one of direction. The contract was a proposal for an agreement, not a direction. If E. W. Tayler wished to exercise his power of appointment, irrespective of the wishes of his son, he needed only, by any method, to direct his son to convey a life estate to E. W. Tayler and his wife, appellant. Then, under the terms of the Aug. '45 contract as we have assumed them to be, respondent and his wife were obligated to so convey and E. W. Tayler or the beneficiaryin this case, appellantcould have enforced the benefits of such a conveyance. But E. W. Tayler, the father, did not so do. He executed and submitted to his son an agreement, necessarily by its very terms making essential the signatures of respondent and wife before it could become binding among the parties. The father was in effect saying to the son: "If you will agree to this, then, and then only, will we consider this contract to be an exercise of my power of appointment."
This construction is compelled also by the letter of August 28, 1947 from father to the son, to which we have heretofore referred. This letter was written approximately one month after the July '47 contract was mailed to respondent. In this letter E. W. Tayler asked his son to please return the papers. He indicated that he didn't remember what they provided, but that he didn't think it was "what we want", and indicated a further attempt would be made to "fix things" so they would be satisfactory. This letter can only be rationally explained if the July '47 contract is construed as we have herein construed it. Clearly, if E. W. Tayler intended the July '47 contract to be an exercise by him of his power of appointment, he would not, one month after signing, ask for the return of the contract and indicate that the matter would be adjusted to the satisfaction of the parties. On the contrary, this letter clearly indicates that the intention of E. W. Tayler in executing the July '47 contract was to make the exercise of his power of appointment contingent upon the agreement of respondent and his wife.
We therefore hold that the July '47 contract was not the exercise by E. W. Tayler of any power in him by virtue of the Aug. '45 contract, and that appellant received no interest of any kind in, nor any enforceable right in or to, the property in question by virtue of the July '47 contract.
The judgment is affirmed.
VAN OSDOL and LOZIER, CC., concur.
PER CURIAM.
The foregoing opinion by COIL, C., is adopted as the opinion of the court.
All concur.