SECURITY TRUST AND SAFE DEPOSIT COMPANY, Administrator
*d. b. n. c. t. a.* of Hannah M. Darlington, deceased,

*vs.*

CHRISTOPHER L. WARD.

*New Castle, March* 24, 1915.

Whether a power of appointment reserved in a deed conveying land
in Delaware in trust was executed by the will of a person domiciled in
Pennsylvania and probated there was governed by the laws of Delaware.

D. conveyed a house and lot in trust for certain persons during
their life, and after the death of the survivor of them to hold the property
for the use of such persons and subject to such limitations as the donor
by will should direct, limit and appoint.   The lot was described by
metes and bounds, and from the description was located on the west side
of S. street between N. and T. streets.   By a will which made no refer-
ence to the power of appointment or to the trust, and did not profess to
dispose of any property except such as she owned and possessed abso-
lutely, the donor devised her house and lot on the west side of S. street
between N. and T. streets to the *cestuis que trustent* for their lives, and
upon the death of the survivor directed that the house and lot should be
sold and the proceeds paid over to persons named.   She owned but one
house and lot on the west side of S. street between N. and T. streets.   *Held*,
that the will constituted a due and sufficient execution of the power, as
to effectively execute a power of appointment there must be an evident
intention to do so, which may be shown by a reference to the power, or
by a reference to the property which is the subject-matter of the trust,
and, the identity of the property described in the deed with that men-
tioned in the will being established, there was in the will a sufficient ref-
erence to the property which was the subject-matter of the power.

A general power of appointment warrants a direction to sell and
convey and divide the proceeds of sale.

A deed conveying land to a person, his heirs and assigns, to and for
the only proper use and behoof of such person, his heirs and assigns, for-
ever, in trust nevertheless for the purposes therein stated, gave him the
legal title.

A "power" is an authority given to or reserved by one to dispose of
property for the benefit of others, and is a method of causing a use, with
its accompanying estate, to spring up at the will of a given person.

Powers take effect as executory limitations, and the person in whose favor an appointment is made takes the land as if there had been an executory limitation in his favor in the original instrument.

If the estate created by the exercise of a power be preceded immediately by another estate, as a life estate, it will take effect as a remainder, and not as an executory interest.

Upon the execution of a power of appointment, the estates limited by the execution take effect as if they had been limited in the original instrument.

Where property is given to a trustee to be held subject to a power of appointment by another by will, and the appointor or donee of the power by will directs his executor to convert the property by a sale thereof, the executor, and not the original trustee, is empowered to sell.

*Rev. Code* 1852, amended to 1874, *c.* 90, §17, providing that if by any will real estate be devised to be sold, and no person be authorized to make the sale, the persons having the execution of the will shall have authority to sell the real estate in execution of the devise, and 24 *Del. Laws, c.* 235, providing that if by any will real estate be devised for life, and after the death of the life tenant to be sold, and no person be authorized to make the sale, the persons having the execution of the will at the period when such sale is directed to be made shall have authority to sell, where a person having a power of appointment as to land held in trust after the death of the beneficiaries of the trust for life by her will directed that the property should be sold and the proceeds divided among certain persons, without specifying by whom the sale should be made, an administrator *c. t. a.*, appointed after the death of the executrix named in the will, was authorized to sell the land, and the fact that it had not been appointed administrator when the surviving equitable life tenant died did not affect its power in this respect.

*Rev. Code* 1852, amended to 1874, *c.* 90, §17, and 24 *Del. Laws, c.* 235, being enabling or remedial statutes, intended to aid and not obstruct the free execution of the wishes of a testator, should be liberally construed, and should be applied in every case where there is a direction to convert by sale, and no one is directed to sell, even if it does not appear from the will that the proceeds of the sale are distributable as part of the personal estate in the hands of the executor.

Where a power of appointment is exercised by a will directing a sale of the property, the beneficiaries under which are necessarily volunteers, the proceeds of sale are applicable to the payment of the debts of the person exercising the power of appointment.

Where the grantor in a trust deed reserved a power of appointment,

and by her will directed a sale of the property and a division of the proceeds, though the executrix or an administrator, *c. t. a.* could sell the property, the legal title being in the trustee, who was dead, a new trustee should be appointed to join in a conveyance of the property.

Under 23 *Del. Laws, c.* 197, providing that whenever the sole or surviving trustee shall die or be removed, and whenever in such case a trustee shall be appointed by the Chancellor, the trust property shall forthwith and without any act or deed pass to and be vested in the new or succeeding trustee, upon the appointment of a trustee to succeed a deceased trustee, title vested in him without a conveyance from the heir of the deceased trustee.

BILL FOR SPECIFIC PERFORMANCE. This is a bill f )r specific performance, the facts being these: Hannah M. Darlington owning a house and lot of land, situate on the westerly side of Shipley Street, and known as No. 919 Shipley Street, by deed dated July 14, 1885, conveyed the same to Thomas Darlington in trust to permit Anna and Emily Webb, and the survivor of them, to occupy it for life, and after the death of the survivor of them, as follows:

"* * * To hold the same for the use of such person or persons and for such estate or estates and subject to such limitations and provisos as the said Hannah M. Darlington by any writing in the nature of a last will and testament and executed as such in her lifetime shall direct, limit and appoint, and in default of such appointment, then to hold the same for the use of such person or persons, as shall at the decease of the said Hannah M. Darlington, answer the description of heirs at law, of the said Hannah M. Darlington. * * *"

Hannah M. Darlington died in 1900, and by her will dated August 15, 1887, provided *inter alia* as follows:

"Fifth. I give and devise to Anna and Emily Webb of the City of Wilmington, and State of Delaware, my house and lot in said City of Wilmington, situated on the west side of Shipley St., between Ninth and Tenth, to have and to hold the same, for and during the life of the survivor of them. And upon the death of the survivor of them, I direct said house and lot shall be sold and the proceeds arising therefrom to be paid over to the sisters of the said Anna and Emily Webb, viz.: Mary Palmer and Eliza Clement of Alameda, California, and Sarah Peterson of Germantown, in equal shares, and if any of the sisters being deceased at the time leaving issue, such issue to take among them the share that his, her or their parents would have taken if then living."

She also appointed an executrix, to whom letters were granted and who has since died, and the complainant, the Security Trust and Safe Deposit Company was then appointed administrator *d. b. n. c. t. a.*

Thomas Darlington died in 1902, and no trustee has been appointed in his place. Emily Webb having survived her sister, died April 24, 1914. The complainant sold the premises at public auction to the defendant, who refuses to take the title. By the bill it is alleged that the property described in the deed to Thomas Darlington is the same premises as that mentioned in the fifth item of the will of Hannah M. Darlington. The prayer is that the purchaser be compelled to accept the deed tendered to and refused by him, the deed being attached to the bill.

By his answer, the defendant, Christopher L. Ward, the purchaser at the sale, does not admit the identity of the property described in the deed with that mentioned in the will; denies that the complainant is able to convey a good title; and alleges that the deed tendered was insufficient. He also says there was not a due, proper and sufficient execution by Hannah M. Darlington of the power of appointment; that if there be a sufficient execution of the power of appointment, the sale should be made not by the complainant, the administrator *c. t. a.* of Hannah M. Darlington, but by a new trustee to be appointed in place of Thomas Darlington, deceased.

By agreement of the parties, evidence of the identity of the premises described in the deed with that mentioned in the fifth item of the will of Hannah M. Darlington was offered by affidavits of witnesses filed in the cause in lieu of testimony taken otherwise.

*Benjamin Nields*, for the complainant.
*Christopher L. Ward, in pro. per.*

THE CHANCELLOR. As appears from the foregoing statement, it must first be determined whether Hannah M. Darlington duly executed the power of appointment reserved to herself in the conveyance she made to Thomas Darlington. The sub-

ject matter of the power being land in Delaware, the question as to the execution of it is governed by the law of Delaware, though the power was exercised, if at all, by a will made by a person domiciled in Pennsylvania and probated there. *Lane v. Lane*, 4 *Pennewill* 368, 55 *Atl*. 184, 64 *L. R. A*. 849, 103 *Am. St. Rep*. 122.

The Supreme Court of this State, in 1903, in the case of *Lane v. Lane*, 4 *Pennewill* 368, 55 *Atl*. 184, 64 *L. R. A*. 849, 103 *Am. St. Rep*. 122, adopted the principle of common law laid down in *Davis v. Vincent*, 1 *Houst*. 416, in 1857, to the effect that in order to effectively execute a power of appointment there must be an evident intention to do so, and that this intention is shown by a reference to the power by the donee when executing it, or a reference to the property which is the subject matter of the power. The general power of appointment warrants a direction to sell and convey and divide the proceeds of sale. *Harker v. Reilly*, 4 *Del. Ch*. 72; also 31 *Cyc*. 1069 *and* 1071.

In the will of Hannah M. Darlington there is clearly no reference, direct or indirect, to the power of appointment, or to the deed made by her to Thomas Darlington creating it, or to the trust created by the deed to Darlington. She did not even profess to dispose of all her own property, and in no way indicated her intention to do other than dispose of property which she owned and possessed absolutely, unaffected by any trust or power. The reference is always to "my property," or "my estate," and like language. Neither is it clear from the will that there is a reference in it to the property described in the deed to Darlington. By the deed a certain lot of land described by metes and bounds was conveyed, and from the description it was located on the west side of Shipley Street between Ninth and Tenth Streets, and the will gave to Anna and Emily Webb "my house and lot in said City of Wilmington situated on the west side of Shipley Street between Ninth and Tenth." But it was clearly proved by the testimony produced that the testatrix owned but one house and lot on the west side of Shipley Street between Ninth and Tenth Streets. The identity of the property described in the deed with that

mentioned in the will being established, there was in the latter instrument a reference to the property which was the subject matter of the power, so that there was a due and sufficient execution of the power by the appointor or donee of the power, Hannah M. Darlington, by the sixth item of her will.

The next question is as to who is to carry out the provision of the will to convert the property and divide the proceeds. Can it be done by the administrator *c. t. a.* of Hannah M. Darlington, or must it be done by a new trustee to be appointed in place of Thomas Darlington, deceased? It is claimed by the defendant that as the legal title was in Thomas Darlington and descended to his heir at law at his death, the sale and conveyance could not have been made by the executrix of the will of Hannah M. Darlington, and that it certainly cannot now be made by the administrator *c. t. a.* of Hannah M. Darlington. The case can best be decided by first considering the questions raised as though Thomas Darlington and the executrix of the will of Hannah M. Darlington were both still alive, and as though by the will the executrix had been expressly directed to convert the property and divide the proceeds. It is true, as shown by the argument of the defendant, that Thomas Darlington took the legal estate in the premises and had it at the time of his death. By the deed the conveyance was to Thomas Darlington, party of the second part, "his heirs and assigns, to and for the only proper use and behoof of the party of the second part, his heirs and assigns forever, in trust nevertheless," etc. This gave him the legal title. 1 *Perry on Trusts*, §304. But this does not settle the problem as to who is to carry out the purpose declared by the appointor or donee of the power. The subject of powers of appointment is rather abstruse and not frequently considered, and the following principles will help a solution of the immediate difficulties.

Powers of appointment before the statute of uses were mere directions to the trustee of the legal estate how to convey the estate. They were future uses to be designated by the the person to whom the power was given. After the statute it was different. As is said in *Washburn on Real Property, Vol. 2 (4th Ed.) p.* 637, referring to the donee of the power:

"His is a mere power, which operates, when exercised in the form prescribed, as a limitation of use in favor of the one he may name; and then the statute at once unites the seisin with the use, the appointee executing it, and thereby perfecting his estate."

Or, as explained in 1 *Sugden on Powers* (3 *Am. Ed.*) 82, \*11:

"When a power was executed, as the person in whose favor the appointment was made became invested with the use, he instantly gained the legal estate by force of the statute."

A power is an authority given to, or reserved by one to dispose of property for the benefit of others. It is a method of causing a use with its accompanying estate to spring up at the will of a given person. *Williams' Real Property*, 245; 2 *Washburn on Real Property*, 300; *Id.* (4*th Ed.*) 635.

Powers take effect as executory limitations. The person in whose favor an appointment is made takes the land as if there had been an executory limitation in his favor in the original instrument. Thus, if there be a conveyance to A. and to his heirs to such uses as the grantor may appoint, and the appointment be made to C. and his heirs, the land vests in C. in fee simple by way of springing use as if the original limitation had been given to him, the fee resulting until appointment to the grantor. 1 *Tiffany on Real Property*, §275. If the estate created by the exercise of the power be preceded immediately by another estate, as a life estate, it will take effect as a remainder, and not as an executory interest. 1 *Tiffany on Real Property*, §275.

Upon the execution of a power of appointment the estates limited by the execution take effect as if they had been limited in the original instrument creating the power. "The appointee is in by the original deed." 2 *Washburn on Real Property*, \*320. Where, however, the legal estate is created by conveyance to a trustee for A. for life, with remainder in trust to such persons as A. shall appoint, and in default of appointment in trust for B. in fee simple, in that case the exercise by A. of the power in favor of C. will divest the equitable interest in B. in favor of C. without, however, affecting the legal ownership in the trustee,

except that he will, in equity, be compelled to hold for the benefit of C.   1 *Tiffany on Real Property*, §276, *citing Sugden on Powers*, 200; *Farwell on Powers*, 2.

From these principles it appears that Thomas Darlington, if living, would hold the legal title for the benefit of the person to whom the executrix, if she were still alive and had been directed to do so by the will of Hannah M. Darlington, would have sold the property.   Whether this will apply to this case, where the executrix is dead and no one was named in the will to convert the property will be considered later.

From a careful examination of the authorities, I conclude that if the will had directed a conversion by the executrix, she and not the trustee under the deed would have had that power of sale.   Where property is given to a trustee to be held subject to a power of appointment by another by will, and the appointor or donee of the power by will direct his executor to convert by a sale of the property, then the executor, and not the original trustee, would have been the person empowered to sell.

In *Cowx v. Foster*, 1 *Johnson and Hemming* (70 *Eng. Reprint*) 30, a testator having a power to appoint realty among children, in execution of the power devised it to new trustees to sell and divide the proceeds among his children in certain shares.   It was held, that the testamentary trustees could make a good title and give effectual receipts for the purchase money, and a decree for specific performance was made against a purchaser from the trustees.   In *Hayes v. Watley*, L. R. 14 *Eq. Cas.* 1, a general power of appointment had been given to a married woman, who executed it and appointed an executor.   The trustees of the settlement paid the whole fund to the executor, and it was held that this was proper, though part of it was afterwards lost, and that the trustees under the settlement were not answerable for the loss.   In accord is *In re Hoskin's Trusts*, L. R. 6 *Ch. Div.* 281; also *Olney v. Balch*, 154 *Mass.* 318, 28 *N. E.* 258; *Humphrey v. Campbell*, 59 *S. C.* 39, 37 *S. E.* 26.

In *Harker v. Reilly*, 4 *Del. Ch.* 72, the donee of the power directed a conveyance by the original trustee to a new testamentary trustee, to be held by the latter in trust to sell the

property and dispose of the proceeds. This conveyance was in fact made by the original trustee to the testamentary trustee, so that there was in that case no occasion to consider the question here involved. There the property was sold not by either of the trustees, but by the sheriff on a writ of *levari facias* to collect a mortgage on the premises. But it should be noted that the balance of the proceeds after deducting the mortgage debt was paid to the testamentary trustee, who was also the administrator *c. t. a.* of the donee of the power, and was administered by such trustee or administrator.

In this case, however, no one was named to make the sale, and it is strongly urged by the defendant that the administrator *c. t. a.* cannot do so. But to this I do not agree. Even if there was no implied power, the power was given by the statutes of Delaware. By the Act of 1871 (*Rev. Code* 1852, amended to 1874, *c.* 90, §17), it is provided, as follows:

"If, by any will, real estate be devised to be sold, and no person be authorized to make said sale, the person, or persons, having the execution of the said will, or the survivor or survivors of them, if several, shall have authority to sell said real estate in execution of the said devise."

And by an Act passed in 1907 (24 *Del. Laws, Chap.* 235) it is further provided, as follows:

"* * * If, by any will, real estate be devised to a person or persons for life and after the death of such life tenant or life tenants to be sold, and no person be authorized to make said sale, the person or persons who shall have the execution of said will at the period when such sale is directed to be made, or the survivor or survivors of them, if several, shall have authority to sell said real estate in execution of said devise."

Both statutes are printed together as *Section* 19 *of chapter* 99 *of the Revised Code of* 1915.

In this case there is by will land to be sold and no person was authorized to make the sale, for as shown herein the original trustee was not so authorized, and the complainant as administrator *c. t. a.* now has the execution of the will. It is, then, a case within the broad language of the statute. But the defendant asserts that in *Chandler v. Delaplaine*, 4 *Del. Ch.* 503, 506,

decided in 1872, Chancellor Bates took a view of the statute which makes necessary a different conclusion. There A. devised lands to his wife for life, or during her widowhood, and after her death, or marriage, to his son B. for life; and after his death the land to be sold and the proceeds divided among certain children. His wife was made executrix, but by the will no one was named to make such sale. It was held that the direction to sell could not be executed by an administrator *c. t. a.*, because the statute of 1871 did not apply. But that case is distinguishable from the one here under consideration. The Chancellor said:

"The scope of the section referred to does not seem to be applicable to a case in which, by the plain and unambiguous meaning of the will the power of sale could, under no circumstances, have been carried into effect by the executor, but [for] here, the time at which the sale is directed to be made might not arrive, in case, as was the fact, the testator's widow had not married, until the death of the person appointed executor of the will."

In the case cited the executor was the life tenant, and the statute of 1871, then in force, did not seem to the learned Chancellor to authorize a conversion by one who being the life tenant of the property could not exercise a power to sell it, because the power under the will could be exercised only after the death of the life tenant, and so the court considered that the statute did not apply as against the will. This is my view of what was said in the report of the case, though the language of it is a bit obscure, and if that is the explanation I agree with the conclusion. If, however, the Chancellor meant to limit the application of the statute to cases where there was in the will a direction to sell real estate for the purpose of distribution of the proceeds of sale as part of the personal estate in the hands of the executor, or administrator *d. b. n. c. t. a.*, then I cannot agree with, or be controlled by, his decision. This would be an undue limitation of the evidently useful purpose for which this remedial statute was enacted. Prior thereto it was at least questionable whether an executor, or his substitute, had power to sell land of the testator in cases where by the will there was a direction to sell and no person was by the will

authorized to make the sale, unless the proceeds of sale were made distributable by the executor, or some other provision of the will impliedly established in him some duty respecting the proceeds of sale. 1 *Williams on Executors*, \*779. To be sure Chancellor Bates found no such difficulty in the year 1867 in deciding *Curran v. Ruth*, 4 *Del. Ch.* 27. But there was this real difficulty and technical embarassment in the settlement of estates, and it was to remedy them that the statutes of 1871 and of 1907 herein referred to were enacted. Being enabling or remedial statutes, intended to aid and not obstruct the free execution of the wishes of a testator, they should be liberally construed. They should be applied in every case where there is a direction to convert by sale and no one be directed to sell, even if it does not appear from the will that the proceeds of sale were distributable as part of the personal estate in the hands of the executor. In the case under consideration, and like cases, the proceeds of sale are distributable as part of the estate of the testatrix; for be it noted, that where a power of appointment is exercised by will, the beneficiaries under which are necessarily volunteers, then by the settled rule in equity the proceeds of sale would be applicable to the payment of the debts of the person exercising the power of appointment. 2 *Sugden on Powers*, \*27; 1 *Pomeroy's Equity Jurisprudence* (6*th Ed.*) §252, *note;* 3 *Pomeroy's Equity Jurisprudence*, (6*th Ed.*) §1106; *Story's Equity Jurisprudence*, 176; 4 *Kent's Comm.* 339, 340; *Olney v. Balch*, 154 *Mass.* 318, 28 *N. E.* 258; *Johnson v. Cushing*, 15 *N. H.* 298, 41 *Am. Dec.* 694.

Clearly, therefore, where a power of appointment is exercised by a testator there is the implication that the proceeds of sale are to be administered by whoever has the administration of the estate, meaning thereby the executor, if there be one named and alive, or his substitute if there be none named or alive. I am convinced, then, that the power of sale was in the administrator *d. b. n. c. t. a.* of Hannah M. Darlington, and would not have been in Thomas Darlington if alive, and is not in his heir at law, and would not be in any substituted trustee appointed in his place.

It should be noted that the statute of 1907 supplements

the prior one and applies to cases where there is a direction to sell after the expiration of a life estate, such as there was in this case. This statute gives the power of sale to the administrator *c. t. a.*, though at the death of the surviving equitable life tenant, Emily Webb, the complainant did not have the execution of the will of Hannah M. Darlington, because it had not then been appointed administrator *c. t. a.* The words "at the period" used in the statute of 1907 are not limited to the instant of the death of the life tenant, but refer to the time to elapse after the death of the life tenant, and whoever at any time after the death of the life tenant has the execution of the will, whether as the original executor, or as substitute, will be empowered to sell as directed by the will.

From the above it appears that the sale made to the defendant was a valid one, but the question of the transfer of the legal title remains. Inasmuch as it was vested in Thomas Darlington at his death, a new trustee should be appointed in his place to join the administrator *c. t. a.* of Hannah M. Darlington in a conveyance to the defendant. Under the prayer for general relief, and by the inherent power of the Court of Chancery, the Security Trust and Safe Deposit Company will be appointed such trustee. Under the statute of this State, by such appointment, the legal title to the trust property will vest in the new trustee without a conveyance from the heir at law of Thomas Darlington. See 23 *Del. Laws*, c. 197, *page* 438, approved March 29, 1905.

In conclusion, then, I find that there was a due exercise by Hannah M. Darlington by her will of the power of appointment reserved to her in the deed made by her to Thomas Darlington; that the administrator *d. b. n. c. t. a.* of Hannah M. Darlington had power to sell the premises to the said defendant; that the legal title being in Thomas Darlington at his death, a new trustee should be appointed in his place in order that by the statute the legal title should vest in the new trustee, and be by him transferred to the purchaser; that a deed made to the defendant by the Security Trust and Safe Deposit Company, administrator *d. b. n. c. t. a.* of Hannah M. Darlington, and as trustee appointed by this court in place of Thomas Darlington,

deceased, will convey to the purchaser the premises and all the estate which Hannah M. Darlington had when she conveyed the land to Thomas Darlington; and that the purchaser will take title to the land clear of all trusts.

Inasmuch as there were important questions of law to be adjudicated before the defendant should have been expected to take the title offered him, and the deed in fact tendered being insufficient because made by the administrator *c. t. a.* only, all the costs should be paid from the proceeds of sale.

In accordance with the foregoing opinion the following decree was entered:

On this twenty-fourth day of March, A. D. 1915, the above stated cause having come on to be heard upon bill, answer, testimony and exhibits, and the same having been argued by the solicitors for the respective parties,

And it appearing to the Chancellor that the power of appointment reserved to the said Hannah M. Darlington in and by the deed made by her to Thomas Darlington, dated the fourteenth day of July, A. D. 1885, conveying the premises known as No. 919 Shipley street, in the City of Wilmington, in New Castle County, and State of Delaware, referred to in the bill of complaint, was duly exercised by her last will and testament, as alleged in said bill of complaint, whereby the said testatrix directed that the premises in said deed mentioned be sold, and no person was by her authorized to make said sale;

And it appearing that the said complainant, Security Trust and Safe Deposit Company, administrator *d. b n. c. t. a.* of the said Hannah M. Darlington, has the execution of said last will and testament of said Hannah M. Darlington, and by virtue of the statute of the State of Delaware had authority to sell to said defendant said real estate in execution of said devise;

And it appearing that the legal title to said real estate was vested in the said Thomas Darlington as trustee under said deed at the time of his decease; that no trustee has been appointed in his place; and that it is necessary that a new trustee be appointed in his place to convey the legal title to said premises to said defendant;

It is therefore ordered, adjudged and decreed by the Chancellor that the said Security Trust and Safe Deposit Company, a corporation of the State of Delaware, be and it is hereby appointed trustee of the said land and premises under the said herein recited deed made by the said Hannah M. Darlington to the said Thomas Darlington, in the place of the said Thomas Darlington, deceased.

And it appearing that by virtue of said appointment, and of the statutes of the State of Delaware, the legal title to said lands and premises is vested in the said new trustee herein and hereby appointed, and that a proper deed for said lands and premises duly executed by the said Security Trust and Safe Deposit Company, as administrator *d. b. n. c. t. a.* of said Hannah M. Darlington, and as trustee appointed hereunder in place of the said Thomas Darlington, deceased, would convey the said land and premises and all the estate, title and interest therein and thereto which by said deed made by said Hannah M. Darlington to said Thomas Darlington was conveyed to the said Thomas Darlington as trustee as aforesaid;

It is further ordered, adjudged and decreed by the Chancellor that the said Security Trust and Safe Deposit Company, administrator as aforesaid, and the said Security Trust and Safe Deposit Company, trustee as aforesaid, jointly make and execute a deed of conveyance in fee simple of said lands and premises to the said defendant, and tender the said deed to said defendant, and that upon the tender to said defendant of said deed, the said defendant shall, within ten (10) days from the making of said tender, pay to the said Security Trust and Safe Deposit Company, administrator as aforesaid, the balance of the purchase money, amounting to the sum of four thousand, one hundred and eighty-five dollars ($4,185.00).

And further, that the costs of this cause, which are hereby taxed at the sum of thirty-five dollars and sixty-six cents, be paid by said complainant from the proceeds of said sale.

[Signed]                         Chas. M. Curtis, Chancellor.