WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, Executor of the last Will and Testament of James Gregg, deceased, AND WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, Trustee under a certain deed of trust dated March 24, 1908,

*vs.*

IDA MAY GRIER, THEODORE WALTER GREGG, JAMES E. GREGG, THE TRUSTEES OF THE HOME FOR FRIENDLESS AND DESTITUTE CHILDREN, a corporation of the State of Delaware, THE TRUSTEES OF THE POOR OF NEW CASTLE COUNTY, a public corporation of the State of Delaware, WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, Trustee under the last will and testament of James Gregg, deceased.

*New Castle, July 27, 1932.*

36

*Charles F. Richards,* for complainants.

*James M. Malloy,* for Ida May Grier, Theodore Walter Gregg, and James E. Gregg.

*Ivan Culbertson,* for Trustees of Home for Friendless and Destitute Children.

*Samuel Keil,* for Trustees of Poor of New Castle County.

*Robert H. Richards, Jr.,* for Wilmington Trust Company, Trustee.

THE CHANCELLOR: Whether a power has been executed by the donee thereof is a question of intention. If the intention does not affirmatively appear, it is considered that

the donee elected not to execute the power. *Lane v. Lane,* 4 *Pennewill,* 368, 55 *A.* 184, 64 *L. R. A.* 849, 103 *Am. St. Rep.* 122; *Security Trust & Safe Deposit Co. v. Ward,* 10 *Del. Ch.* 408, 93 *A.* 385; *Equitable Trust Co. v. Paschall, et al.,* 13 *Del. Ch.* 87, 115 *A.* 356. Such is the rule in this State. In some jurisdictions, however, the rule is otherwise—that is to say, an intention to exercise the power is to be presumed in the absence of some appearance to the contrary. Massachusetts supplies the leading decisional authority for the view that the presumption is in favor of an intent to exercise a power, and that an affirmative showing is necessary to rebut it. Statutes have been enacted in some of the states and in England which embody to a more or less degree the same view as a rule of statutory law.

Where there is no statute affecting the question, however, the rule adopted by the courts of this State is, I believe, in accord with the very decided weight of authority. No statute has been enacted in this State which undertakes in any way to alter the effect of the Delaware decisions above referred to, and the rule announced by them remains therefore in full force and vigor.

When it is said however that a power is deemed not to have been exercised unless an intention to exercise it is affirmatively disclosed, it is not meant that such intention needs to be made manifest in any given way. The classic categories into which the cases may be cast that illustrate the methods by which an intention to execute a power may be disclosed are stated by Mr. Justice Story in *Blagge v. Miles,* 1 *Story* 426, 3 *Fed. Cas. page* 559, *No.* 1, 479, to be: "(1) Where there has been some reference in the will or other instrument, to the power; (2) or a reference to the property, which is the subject on which it is to be executed; (3) or, where the provision in the will or other instrument, executed by the donee of the power, would otherwise be ineffectual, or a mere nullity; in other words, it would have no operation, except as an execution of the power." But

the same learned judge further in effect observed in the cited case that it is not absolutely necessary that a given case shall fall into one of these classes in order that an intention to execute a power may be evidenced. "If a case of clear intention should arise," said he, "although not falling within the predicament of these classes, it must be held, that the power is well executed, unless courts of justice are at liberty to overturn principles, instead of interpreting acts and intentions." The principles which he insinuates that judges are not at liberty to overturn in the process of ascertaining the intention of the donee of a power with respect to its exercise, I think are those principles generally by which courts are guided in the broad undertaking of seeking to derive the intention of one who executes an instrument, for at a later point in his opinion he says—"But then this very statement leaves it open to inquire into the intention under all the circumstances; which seems to me to be the true and sensible rule upon the subject; and when that intention is thus once ascertained, it governs."

We are then entitled to look to all the circumstances, and among these circumstances certainly those which are disclosed by the instrument itself are of prime importance. This is but another way of saying that in asking whether a will constitutes an exercise of a power, we are entitled to look at the whole will in all of its parts in order to see if there are any elucidating features which throw light on the particular question of intention in its relation to the power. To do this is to do no more than to apply the general rule applicable to the interpretation of wills. Numerous cases might be cited where such an exploring of the whole will has been engaged in for the purpose of searching for evidence bearing on whether an intention to exercise a power was entertained by the testator. A striking case in this connection is *Hunloke v. Gell*, 1 *Russ. & M.* 515, 39 *Engl. Rep.* 198. In that case the testator had a power of appointment under a marriage settlement, and the question

was whether his will executed the power. There was no statement in the will that it was made in execution of the power. The testator appears to have possessed a considerable estate of his own laying out of account that over which he had a power of appointment under the settlement. If I read that case aright, the Master of the Rolls, Sir John Leach, concluded from an examination of the whole will that the testator had the settlement in mind for, while no express intent to execute the power conferred by the settlement was expressed, yet some of the dispositions in the will seemed to be framed so as to blend into the scheme of the settlement, and therefore it was to be inferred that the testator intended to execute the power which the settlement created. And *Blagge v. Miles, supra,* may be cited as a leading American authority establishing the same principle of interpretation, for in that case it was held, that from the circumstance that the testatrix specifically disposed of land in Connecticut to which she had no right except by virtue of a power, an intention was to be inferred that other property subject to the power should pass under a general devise in which neither the power nor the subject of it was mentioned.

Now examining the will of James Gregg in its entirety, is it not evident from the will itself, without regard to the other extraneous circumstances having to do with the condition of his estate, that he intended his will to operate as an execution of the power conferred by the trust deed to appoint the two-thirds of the proceeds? This much is plain —he certainly had the trust deed in mind when he wrote his will. The second item, wherein he mentions the provision made by the trust deed for his wife, shows that. But the seventh item shows it in an even more positive way. By that item he treats the trust property, as to two-thirds of the proceeds of which he had the power of appointment, as real estate belonging to him. This of course was an erroneous point of view, for the only right he had in it was

to receive two-thirds of the rents during life and to appoint by will the persons who should take two-thirds of the proceeds derived from its sale. So far as he was concerned the real estate which he had formerly owned and conveyed in trust was regarded in law as converted into personalty.

When the testator died the real estate had not been sold. He, evidently thinking of it still as realty, undertook by the seventh item to authorize its sale and conversion. Yet he had thirteen years earlier directed its conversion into personalty after the death of himself and wife. His testamentary direction of a sale was therefore in legal contemplation a mere gesture. But language in a will which as a legal proposition is vain of purpose and ineffective, may be legitimately considered in the endeavor to discover the intent which the will seeks to express. *Wilmington Trust Co. v. Houlehan, et al.,* 15 *Del. Ch.* 84, 131 *A.* 529. And so in this case notwithstanding the authority to sell conferred by the seventh item was an empty authority by reason of the trust deed which the testator had previously executed, the fact remains that he thought, though erroneously, that the subject matter of the authority in its condition of real estate was one over which he had testamentary control. If that was his thought, as undoubtedly it was, then it must in reason follow that we are put in possession of a very significant key with which to unlock his general intent with respect to that particular subject matter.

It is to be noted that the trust deed directed the trustee therein named to sell the land. The seventh item of the will empowered the trustee named in the will to sell the same land. Thus far the will regards the land as the testator's real estate. But later in the item he recognizes that the sale to be made by his testamentary trustee must be made subject to the provisions of what he refers to as the declaration of trust dated in 1908, the proceeds of the sale to be held subject to the same trusts and conditions as the property sold. Held by whom? Held, I think, by the trus-

tee under the will, for it is a sale by such trustee that the testator was, though vainly, providing for.

Now if we look to the trust deed where the trusts and conditions are defined to which the property was subject we find them, as to the proceeds derived therefrom on a sale, to be two: viz., pay one-third thereof to the wife if living, if not to her children or their heirs; and to pay two-thirds thereof pursuant to the testator's last will and testament or if there should be no last will and testament to those entitled under the intestate laws. Item 7 of the will, then, directs that the testamentary trustee shall hold the proceeds subject to those two trusts and conditions. It is evident that the testator did not intend his testamentary trustee to hold the two-thirds of the proceeds subject to the exercise by him of a power of appointment by will. That would be absurd, for the testamentary trustee could never come into the office of such trustee until after the testator who was to exercise the power to appoint had departed this life. It would be foolish in the extreme to expect to find a man providing by his own will for a power of appointment to be executed by another will to be made by himself after death.

It must be, then, that all the testator meant when he said that his testamentary trustee was to hold the entire proceeds of sale subject to the same trusts and conditions as the property sold was subject to, was that the first condition above stated, viz., that one-third of the proceeds should be paid to the wife, should be carried out. I cannot escape the conclusion that the testator considered that by his will he was disposing of the other two-thirds, and was thereby executing the power.

It is true that item seven does not in terms dispose of the two-thirds interest as personal property. It deals with the entire property on the theory that it was real estate belonging to the testator. The testator shows an unmistakable intent however to make a testamentary disposition of

the property out of which the proceeds over which he had a power of appointment are to be derived. It is as though he said, I give all my residuary estate, real and personal, to a trustee in trust, and I authorize said trustee to sell the real estate which I have already authorized another trustee to sell, and to hold the proceeds as a part of my residuary estate after paying thereout one-third of the proceeds to others in accordance with a prior declaration of trust executed by me.

Such is the meaning which I derive from this will. If such is its meaning there can be no doubt but that the intent is revealed on the part of the testator to execute the power reposed in him by the declaration of trust. The circumstance that he erroneously regarded the property as unconverted real estate instead of personalty does not in my judgment in anywise lessen the force of his language as a revelation of intention on his part to dispose of the proceeds to be yielded by its sale. If so, the terms of the power are satisfied.

This conclusion is fortified by another consideration which the terms of the will suggest. By items three and four he cut off his son and daughter from a participation in his estate by bequests of one dollar each and expressly stated his reasons for not giving them more. Now if he did not execute the power, two-thirds of the proceeds of the real estate would go to them under the provisions of the trust deed as his distributees under the intestate laws. Thus a construction which would result in a denial of an execution of the power would confer on his son and daughter much more than his clearly disclosed intent showed it was his wish they should receive. I am aware that it may be said that the property over which the power rode was not in law a part of his estate, and that therefore to allow the son and daughter to receive the proceeds would not as a legal proposition be giving them more than one dollar each out of his estate. Notwithstanding this, I think his

plainly expressed intent to cut off his children from participation in his estate, manifested elsewhere in his will, furnishes confirmation at least of the thought that the power was exercised so as similarly to cut them off from participation in its subject matter.

The record of this case is so made up that I am unable to predicate anything as to the testator's intent upon the state of his property holdings at the time he made his will. What the facts are in that regard, is a question which the pleadings are silent upon. It does appear that when the testator died his estate was insufficient to pay even his debts, and that therefore unless he executed the power he had no property with which to meet any of his legacies. That the execution of a power may be evidenced by the circumstance that but for the power the will would be inoperative, is a proposition which is frequently stated in general terms as the undoubted law. But I hang nothing on that proposition in this case, for it would involve an examination of the authorities with the view of ascertaining as to what period the inquiry concerning the state of the testator's property is to be made, whether at the time the will was executed or at the time of death; and further whether any distinction is to be drawn as between the testator's holding of real estate on the one hand and personal property on the other.

I am content to rest this case on the other considerations which I have dwelt upon in the main body of this opinion, without undergoing the labor of examining into the other questions just suggested.

Before concluding my observations concerning this will in its relation to the power, the peculiar language in which the so-called power is expressed should be noticed. It will be observed that it is not in the usual form which is commonly found. The common and familiar manner of expression in such cases is, that the trustee is directed to convey or pay over to such person or persons as A. should

by his last will and testament appoint and in default of appointment to certain other designated persons or classes. Here the direction is to pay "pursuant to the last will and testament of the said James Gregg and in the event of his dying intestate" to those entitled under the intestate laws. He did not die intestate and hence the condition under which his distributees under the intestate laws could take has not been fulfilled. The peculiar language of the trust instrument thus makes it much easier than otherwise to connect the will with the power.

I conclude, then, that taking the will as a whole, the testator executed the power conferred upon him by the deed of trust and that the sum held by the trustee under that deed should be paid over to the executor of James Gregg.

Upon the second question on which instructions are asked, the answer is that the defendant, The Trustees of the Poor of New Castle County, qualifies as the legatee of the legacy given by Item 5 of the will.

Decree in accordance with the foregoing.