102

WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, Guardian for Joseph W. Donner, Jr., and Carroll E. Donner, Jr., by appointment of the Orphans' Court of the State of Delaware, in and for New Castle County,

Complainant,

THE MARINE TRUST COMPANY OF BUFFALO, a corporation of the State of New York, and CARROLL E. DONNER, now Lady Carroll Tennyson, Executors under the Last Will and Testament of Joseph W. Donner, Deceased,

Intervening Complainant,

*vs.*

WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, Succeeding Trustee Under a Certain Trust Agreement dated November 20, 1920,

*New Castle, Aug.* 8, 1935.

*William H. Foulk,* of the firm of Satterthwaite & Foulk, for complainant, Wilmington Trust Company, guardian for Joseph W. Donner, Jr., and Carroll E. Donner, Jr.

*Paul Leahy,* of the firm of Ward & Gray, for intervening complainants, the executors under the will of Joseph W. Donner.

*Caleb S. Layton,* of the firm of Richards, Layton & Finger, for the defendant.

THE CHANCELLOR: This case calls for the construction of a trust created by an agreement entered into by William H. Donner, of Buffalo, New York, as donor, and Dora Browning Donner, of said city, as trustee, on November 20, 1920. The defendant is the present trustee in succession to Dora Browning Donner. By the agreement the donor deposited certain personal property with the trustee and her successor in trust upon the trusts therein specified. The trusts, insofar as the same are here material, are that the trustee should collect the income from the corpus and pay the same as follows: one-fourth thereof to the donor's wife, Dora Browning Donner, for life and the remaining three-fourths thereof during his wife's life, and the whole thereof after her death, to his five children then living and any child that might be thereafter born to him, share and share alike for life. The second paragraph of the agreement is of such importance in this case that it needs to be quoted in full. After the provision for life interests to his children in the income from the trust, the donor proceeded to provide as follows:

"Second. Upon the death of each of my said children, excepting Robert Newsom Donner, but not sooner that ten years from this date, unless my daughter, Elizabeth Browning Donner, shall have died prior to that time, or unless a majority of the adult beneficiaries hereunder consent in writing and so advise the trustee, the trust herein created, shall, except as hereinafter provided, cease and be at an end to the extent of the deceased child's interest or share in the trust fund then subject hereto, that is, the share of the principal of the trust fund from which his or her income has been derived,

which share and any and all property and securities held under the trust to produce the income for such child, shall be paid, transferred, conveyed and delivered to such lawful child or children or other lawful lineal descendants of the Donor then surviving, and in such proportions, and subject to such lawful conditions, as such deceased child shall appoint and designate by last will and testament, or other instrument, duly executed, sufficient for such purpose; and in the absence of such designation or appointment, said share shall at the time so fixed go to the lawful child or children or other lawful lineal descendants of the deceased child, *per stirpes*, free and clear of all trusts and conditions; the income in the meantime, in case the termination of the trust does not take place until after the death of said child, to be paid the person or persons so designated, or in the absence of such designation, to said lawful child or children of the deceased child, provided, however that said deceased child may by last will and testament devise a portion of said share (not exceeding one-fourth thereof, unless authority is given by the Donor to devise a larger proportion by a writing filed with the Trustee) to such person or persons, other than said surviving children and lineal descendants, as he or she may appoint, designate and select; such devise, however, to take effect after her death, but not prior to ten years from this date unless a majority of the adult beneficiaries shall consent in writing and so advise the Trustee, the income in the meantime to be paid to the devisees; and if there be no surviving lawful child or children or other lawful lineal descendants of the deceased child, and no appointment or designation by will or otherwise, the trust as to said share, or in case of a devise of only a portion, then as to any portion thereof not devised, shall remain and continue in force for the use and benefit of my surviving children or child."

On October 9, 1929, Joseph W. Donner, son of the donor and one of the beneficiaries named in said trust agreement, by an instrument under seal which specifically referred to the power conferred upon him by his father's trust agreement, undertook to exercise the same. Said instrument provided *inter alia* as follows:

"I * * * do hereby appoint and designate my two children, Joseph W. Donner, Jr., and Carroll E. Donner, to receive all my interest and share in the said Trust Fund, that is, the share of the principal of the trust fund which my income thereunder has been derived, including the separate trust fund thereunder, subject, however, to the following conditions:

"I direct that any and all property and securities thereunder at my death or thereafter subject to my power and authority to devise or appoint shall be held by the Trustee as a separate trust fund under the said Article of Trust, for the benefit of my said children, Joseph W. Donner, Jr., and Carroll Donner, share and share alike, under and subject to the terms and conditions thereof; the income therefrom to be paid to my said children in equal shares, the amount of income so payable, however, during minority to either such child, except payments to his or her guardian or guardians, necessary in the discretion of said guardian or guardians signified by written demand upon the Trustee, for proper care, maintenance and education, shall be invested by the Trustee in the same manner as in paragraph "Eighth" of said Article of Trust provided, and shall be accumulated for the benefit of said child, and, if it is lawful to do so, shall be held by the Trustee thereunder as a separate trust for the benefit of said child; otherwise it shall be paid over to said child in the form in which it is invested at the time upon his or her arrival at the age of twenty-one years.

"Upon the death of each of my said children, the trust shall cease and be at an end to the extent of such deceased child's interest or share in such separate trust fund, which share and any and all property and securities so held under the trust to produce income for such child be paid, transferred, conveyed and delivered as such child shall have devised or designated and in the absence of such devise or designation, to his or her lawful lineal descendants, if any; otherwise to remain in trust for the benefit of the survivor of my said children; and if there be no such survivor then the said share shall remain as part of the principal of said trust for the benefit of all of the *cestui que trustent* thereunder."

The said Joseph W. Donner died on November 9, 1929, leaving to survive him a widow, Carroll E. Donner, and two minor children, Joseph W. Donner, Jr., and Carroll E. Donner, Jr. He was a resident of Buffalo, New York. He left a last will and testament which was duly proved and allowed in Buffalo, New York. His will was dated February 4, 1927. His will made reference neither to the power nor to the property to which it applied. He possessed property in his own right upon which the will could operate. After disposing of certain real estate and bequeathing certain legacies, the will concluded with a residuary clause as follows:

"Fifth: All the rest, residue and remainder of my property, real, personal and mixed, of whatsoever nature and wheresoever situated, I give, devise and bequeath unto The Marine Trust Company of Buffalo, in trust, nevertheless, for the following uses and purposes.

"To receive, hold and invest and from time to time to reinvest and to collect the rents, issues, income and profits therefrom and to pay over the net income arising therefrom to my wife, Carroll E. Donner, in quarterly installments for and during the term of her life. My said Trustee shall have the power in its discretion to withdraw installments of the principal of said trust fund and pay them over to my said wife from time to time for the maintenance, comfort and welfare of herself and for the proper education of any of my children.

"On the death of my said wife, Carroll E. Donner, I give, devise and bequeath the property constituting the said trust fund to my children then living and to the issue then living of any deceased children, to be divided among them share and share alike, the issue of any deceased child to take the share which the parent would have taken if living, provided, however, that no part of the principal of said trust fund shall be paid over to any such child until he or she has attained the age of twenty-one years, but upon any such child reaching the age of twenty-one years the share of such child shall thereupon be immediately paid over and delivered to him or her. In the meantime my said Trustee shall pay over to such child quarterly the net income arising from his or her share of the said trust fund. In case of the death of any such child before reaching the age of twenty-one years, his or her share of the said trust fund shall be immediately paid over and delivered to his or her issue if any then surviving, and if none, to the next of kin of such child. In the event of death of all of my children prior to the death of my said wife, Carroll E. Donner, leaving no issue of such children her surviving, then and in that event upon the death of my said wife, the trust shall cease and the principal of the said trust fund shall be immediately paid over and delivered to my next of kin."

The bill prays: (1) that a decree be entered declaring the instrument executed by Joseph W. Donner on October 9, 1929, not to be an instrument sufficient for the exercise of the power conferred by the trust agreement of his father on November 20, 1920; (2) that if the said instrument of October 9, 1929, be held to be a proper instrument for the execution of the power, a decree be entered declaring the

future interests which Joseph W. Donner undertook to create by said instrument in favor of the appointees or lawful lineal descendants of his said children, Joseph W. Donner, Jr., and Carroll E. Donner, Jr., to be in violation of the rule against perpetuities and therefore void; (3) that if the instrument of October 9, 1929, be found by the Chancellor to be a sufficient instrument to execute the power, then a decree be entered declaring that the life estates created by said instrument in favor of Joseph W. Donner, Jr., and Carroll E. Donner, Jr., coalesced with the absolute remainders which they had after their own life interests in the appointive estate by virtue of their grandfather's trust agreement of November 20, 1920; (4) that a decree be entered declaring Joseph W. Donner, Jr., and Carroll E. Donner, Jr., to be the absolute owners of that portion of the trust estate created by the agreement of November 20, 1920, formerly held by the defendant trustee for the benefit of their father, Joseph W. Donner, deceased, for the term of his life; (5) and finally, that the defendant trustee account to the complainant, guardian of said Joseph W. Donner, Jr., and Carroll E. Donner, Jr., as the absolute owners of said portion of the trust estate created by the agreement of November 20, 1920, formerly held for the benefit of their father for life.

The guardian of the children of Joseph W. Donner and the executors of his will unite in contending that the instrument which Joseph W. Donner executed on October 9, 1929, was not sufficient for the execution of the power conferred on him by his father. After uniting on that common point, they part company. The executors contend that the power which Joseph W. Donner ineffectually, as they say, undertook to execute by the instrument of October 9, 1929, was nevertheless effectively executed by the residuary clause of his will. The guardian as well as the defendant trustee contests that view.

It is conceded that under the rule prevailing in this state, the residuary clause found in the will of Joseph W.

Donner would be ineffective as an execution of the power. *Lane v. Lane*, 4 *Pennewill*, 368, 55 *A*. 184, 64 *L. R. A.* 849, 103 *Am. St. Rep.* 122; *Security Trust & Safe Deposit Co. v. Ward*, 10 *Del. Ch.* 408, 93 *A*. 385; *Equitable Trust Co. v. Paschall, et al.*, 13 *Del. Ch.* 87, 115 *A*. 356; *Grant, et al., v. Mullen, et al.*, 15 *Del. Ch.* 174, 138 *A*. 613; *Wilmington Trust Co., et al., v. Grier, et al.*, 19 *Del. Ch.* 34, 161 *A*. 921. It is contended, however, that the question of whether the power was executed by the will is to be determined not by the Delaware rule but by the law of New York where the donee of the power resided and where his will was published and proved. The New York rule is expressed in a statute of that state (*Personal Property Law* [*Consol. Laws, c.* 41], § 18) as follows:

"Power to bequeath executed by general provision in will. Personal property embraced in a power to bequeath, passes by a will or testament purporting to pass all the personal property of the testator; unless the intent, that the will or testament shall not operate as an execution of the power, appears therein either expressly or by necessary implication."

The subject of the power was personalty. It may be conceded, without deciding, that where real estate is not involved the question of whether a will executes a power is to be determined by the law of the domicile of the donee-testator. But even so, and granting that if the power was still alive when the will became effective the residuary clause would operate as an execution of the power under the New York statute, I am unable to see how the residuary clause in this case can operate as an exercise of the power. This is for the reason that when the will took effect upon the death of Joseph W. Donner, the power had already been exercised by the instrument of October 9, 1929. That instrument reserved no right of revocation. It was a fixed and conclusive act of appointment. The power was spent and exhausted. Sugden in his work on *Powers* (*3rd Am. Ed.*), *volume* 1, *p.* 293, *star page* 243, states the rule as follows: "Where it is intended not to make an irrevocable

appointment, an express power of revocation should be reserved in the deed executing the power; if it be omitted, the appointment cannot be revoked." See, also, *Bowen v. Chase,* 94 *U. S.* 812, 24 *L. Ed.* 184; *In re Hancock,* (1896) 2 *Ch.* 173; *Worrall v. Jacob,* 3 *Meriv.* 256, 36 *Eng. Reprint* 98; *Hele v. Bond,* 24 *Eng. Reprint* 213. Assuming then *arguendo* that the will undertook to exercise the power, yet when it became operative on the death of Joseph W. Donner the power by its prior irrevocable execution had escaped the will's grasp. Of course, due to the ambulatory nature of a will, its execution before the instrument of October 9, 1929, could not serve to withdraw the power from the operating force of that instrument.

The foregoing removes the claim of the executors of Joseph W. Donner from the necessity of further consideration.

But the point made by the executors which is also joined in by the guardian, viz., that the instrument was not such a method of exercising the power as the agreement of 1920 permitted, must because of the guardian's insistence be passed upon notwithstanding it can, because of the foregoing, be of no further interest to the executors.

The pertinent language of the agreement in connection with that point is—"shall be paid * * * to such child * * * and in such proportions as such deceased child shall appoint and designate by last will and testament, *or other instrument, duly executed, sufficient for such purpose."* (Italics mine.) It is not by "other instrument in the nature of a last will and testament." If it were, there would be room to contend that the appointing instrument would have to possess the ambulatory character of a will, and so always be subject to alteration, change and revocation. Certainly the paper of October 9, 1929, signed and sealed, qualifies as an "instrument duly executed." The argument is made which I confess I am utterly unable to grasp, that "other instrument, etc.," can mean only a will. If so, the query very pertinently arises—then why did not the donor end his

language with the words "will and testament"?  There cannot be any possibility of doubt upon this, that when "or other instrument, etc.," followed immediately after the words "will and testament," the donor did not intend that a will and testament should be the exclusive mode in which the power could be exercised.  In conferring a power of appointment upon one of his other children, Robert Newsom Donner, in the third paragraph of the agreement, the donor directed that the power in Robert's case should be exercised by a "last will and testament," omitting "or other instrument, etc.," as in Joseph's case.  From this circumstance, it is argued on behalf of the guardian, that it must have been the intent of the donor to confine Joseph, as he had Robert, to a last will and testament as the exclusive method of appointment.  The difference in language defining the mode of exercising the power in Robert's case as contrasted with Joseph's, instead of indicating an intent that the method in both should be the same, is rather calculated to show with great persuasiveness that while in Robert's case the power could be exercised by will only, in Joseph's it could be exercised not only by a will but as well by another instrument.  The guardian's argument in this connection is a gun which can easily be captured and turned against it.

That the donor did not intend to confine his son Joseph to a last will and testament as the exclusive means of executing the power is not only shown by the italicized clause above quoted but is also confirmed at a later place in the second paragraph of the agreement of November 20, 1920, where, again referring to the manner in which the power could be exercised by Joseph, he used the expression "by will *or otherwise.*"

A power to appoint by will or otherwise authorizes the appointment by deed.  *Irwin v. Farrer,* 19 *Ves.* 86, 34 *Eng. Reprint* 450; *Saunders v. Evans,* 8 *H. L. C.* 721, 11 *Eng. Reprint* 611; 1 *Sugden on Powers, star page* 258; 23 *Haslbury's Laws of England, p.* 26.

The sealed instrument of October 9, 1929, was a legitimate mode of executing the power conferred by the donor upon his son Joseph.

The next question to be considered concerns the extent of the effectiveness of the instrument of October 9, 1929, to create the estates or interests it assumed to appoint. The interests created by Joseph W. Donner's instrument of appointment are to be regarded as interests undertaken to be created by the donor. *Equitable Trust Co. v. Snader,* 17 *Del. Ch.* 203, 151 *A.* 712. That being so, it is as if the donor had limited equitable estates (1) to his son Joseph for life, (2) remainder to Joseph's children for life, and (3) remainder absolutely to their appointees and in default of appointment to their lineal descendants. Plainly the limitation just designated as (3) is in violation of the rule against remoteness, generally spoken of as the rule against perpetuities. The vesting of the interest in the donor's unborn great grandchildren or their appointees or lineal descendants may not occur, speaking as of the date of the donor's agreement of November 20, 1920, within a life or lives in being and twenty-one years thereafter. In this particular the case is exactly similar to *Equitable Trust Co. v. Snader, supra.*

But it is plain that the equitable life interests conferred by the appointment upon the children of Joseph W. Donner must vest in them within the period prescribed by the rule, for they are to receive it upon the death of their father who was in being when the donor created the trust. The power conferred on Joseph W. Donner empowered him to appoint as much as the entire interest in the estate, the equal of a fee simple in real estate. He was not bound, however, to exercise the power to its fullest extent if he exercised it at all. Where the power is general as to the quantum of estate which may be appointed, "the donee may appoint a lesser or qualified estate in the property, and it is not necessary to execute the power in its entirety and to its full extent. This is held upon the principle that the lesser is included in

the greater." 21 *R. C. L.*, *p.* 804, § 37. See, also, 49 *C. J.*, *p.* 1267, § 55. This is the general rule, and the propriety of its application to the case in hand is emphasized by particular language in the agreement which I shall not pause to point out.

An argument was advanced by the solicitor for the executors that the equitable life interests in the children of Joseph W. Donner, notwithstanding they must vest within the limits of the rule, are nevertheless void because they are a component and inseparable part of a general scheme of tying up the appointive estate beyond the period permitted by the rule against perpetuities. Where that is the case, it is argued, the whole series of limitations should be struck down. Cases from Pennsylvania, Missouri, Illinois, Connecticut, California and New York are cited in support of this contention. I have not examined all of the cases cited. I do not deem it necessary to do so. It should be said in passing, however, that the rule which these cases are cited to support receives the pronounced disapproval of Professor Gray, who is somewhat caustic at times in his criticism of their holdings. Some of the cited cases are referred to and discussed in his text. See *Gray, The Rule Against Perpetuities* (*3d Ed.*) § 249-*a*, *et seq.* Cases of the cited type involve the court in the rather difficult problem of ascertaining whether the intent of a donor or testator to benefit the remotest objects of his benefaction is so dominant over his regard for the intermediate and nearer ones as to lead to the conviction that if the distant ones receive nothing, the nearer and as a rule consanguineously closer ones shall likewise receive nothing. There may possibly be a case, Professor Gray agrees, where the limitations in the series are so inextricably intertwined that the good cannot be separated from the bad and the whole should therefore fall. But such a case ought not to rest on the insecurity of any possible doubt. I confess that in the few cases I have read which apply the rule of complete destruction, the courts appear to me to have wandered into the uncertain field of

speculation upon the donor's or testator's intent. "If anything is now well settled in the law," says Professor Gray in *par.* 249-*a* of the work already referred to, "it is that a life estate, good in itself, is not destroyed by the remainder over being bad for remoteness or any other reason."

Taking the limitations in these two instruments as though they had all been created by the donor, William. H. Donner, it is impossible for me to say that it clearly appears that he intended by them to invent such an integrated scheme of forbiddenly remote control over the transmission of his property that if a part of his limitations fail all must fall. I shall not elaborate my reasons for this view. That being my view, it is unnecessary for me to determine whether the rule for which the cases from the above noted jurisdictions are cited should be embodied in the decisional law of this state. The instant case is one where the rule of the settled law as stated by Gray, quoted *supra,* applies.

It appears to be conceded by the solicitor for the guardian, as of course it is insisted upon by the solicitor for the trustee, that if the instrument of October 9, 1929, constituted a permissable method of executing the power, as it did, the equitable life interests in the children of Joseph W. Donner are good in all respects. The only question concerning them which the solicitors have seen fit to raise is the question of their validity as tested by the further question of whether the period of their vesting is too remote, or whether, as just noted in reviewing the argument of the solicitor for the executors, they are inseparably intertwined with other limitations that are too remote in their vesting. By that test, the interests of the children of Joseph W. Donner are nonassailable. I shall not. examine any question concerning any features that may attach to those interests which the language creating them may suggest as not permissible, but which have not been raised.

But conceeding that the equitable life interests in the children of Joseph W. Donner are perfectly valid, as the solicitor for the guardian does (the executors are not in-

terested in what follows), he nevertheless contends that the trust should be decreed to be terminated and that the trustee should be decreed to account to the guardian as the one now entitled to the absolute ownership of the corpus in behalf of the children. In support of this contention the case of *Equitable Trust Co. v. Snader, supra,* is cited. In that case it was held that where an equitable life estate was created for the sole purpose of protecting remainders which were ineffective on the ground of remoteness, the purpose of the trust had ended, and the life beneficiaries who were entitled to the corpus absolutely as remaindermen had a right to have the trust for life decreed to be terminated and the corpus turned over to them free of all trusts. In the *Snader Case* it was said that whether the trust should be kept alive was a question of the donor's intention. Accordingly the terms of the trust were examined in order to discover the donor's intent. That purpose appearing to be as just stated, the trust was properly declared to be at an end.

But in the instant case it cannot be said that the purpose of the trust for life in the children was solely to support the ineffective remainders over. The instrument of appointment which Joseph W. Donner executed imposed upon the corpus the same terms and conditions of trust that his father had specified in the agreement of November 20, 1920. Now those terms and conditions contained provisions in Article 15 of the agreement to the effect that the income should be paid to the beneficiaries for life, to them and them only, that they should not sell or assign the same, nor dispose of the same by anticipation or otherwise, and that the income should not be liable for any debts or engagements of the life beneficiaries, nor be subject to attachment, levy, sequestration or execution of any kind.

There were no such provisions as these in the trust which was before the court in the *Snader Case.* In the face of provisions of that sort, how can it possibly be said that the purpose of the equitable life estates in the instant case was solely to support remainders? This case is clearly

distinguishable from the *Snader Case* in the important and vital particular just pointed out. The point of distinction is noticed in the *Snader Case,* itself.

The bill should be dismissed. Decree accordingly.