SECURITY TRUST COMPANY, a corporation of the State of Delaware.

*vs.*

WILLIAM G. CRUMLISH and JOHN S. CRUMLISH and EDMUND J. FITZMAURICE.

*New Castle, June 4, 1936.*

*John J. Morris, Jr.,* of the firm of Hering & Morris, for complainant.

*John W. Huxley, Jr.,* for William G. Crumlish and John S. Crumlish.

*Paul Leahy,* of the firm of Ward & Gray, for Edmund J. Fitzmaurice, Bishop of the Roman Catholic Church of the Diocese of Delaware.

THE CHANCELLOR: 1. Did the will execute the power? On this question I have no doubt. Reference to the will clearly shows that the testatrix had the power in mind when she published her will and that she intended to make a testamentary appointment of the principal of the trust after her life interest was terminated.

Near the outset of the will, in the second paragraph, the testatrix used this language:

"I am now receiving the entire income from a trust fund held by Security Trust Company, a corporation of the State of Delaware, in which trust agreement it is provided that I have power of appointment."

That language is found in item second of the will, and constitutes the entire item. Its recital of a fact and its reference to the power suggest the natural inference that the testatrix was meaning thereby to link the ensuing will with the power. This inference is strongly corroborated by later testamentary provisions. For instance the fifth item provides that Security Trust Company, trustee of the property subject to the power, shall appropriate the income from the trust fund towards paying the indebtedness of the testatrix to the bank "until said indebtedness is cancelled"; but, if that is not practicable, then said indebtedness should be "paid in bulk out of my estate." Here, therefore, there was an express attempt to dispose of the income of the trust after the interest of the testatrix as life beneficiary had ceased. This cannot consist with anything other than an intent to execute the power. Furthermore in item eighth, the testatrix directed that the only real estate she owned, *viz.*, her home at 510 West 14th Street, Wilmington, Delaware, "be added to other property now in my trust fund and be managed by said Security Trust Company, in the event the trust fund is kept intact. In the event, however, that my debts are paid in bulk, it shall be sold and added to the corpus of my estate which shall be disposed of as hereinafter directed." This item contemplates the trust fund as belonging to the testatrix and with

it she mingles her home property. In addition, in the eleventh item, the testatrix authorized her "trustee, in its discretion, to pay out of the principal of my trust estate, such amounts, etc.," as it shall consider proper in certain emergencies. I understand the phrase "my trust estate" in this connection to mean the trust fund from which she had been drawing the income for life and over which she had the power of appointment.

An intent to execute the power is thus manifested by an express reference to it in one instance, to a direction regarding the future income from it in another instance and to the property composing its corpus in two other instances. That is enough to warrant the conclusion that the testatrix intended to execute the power. *Lane v. Lane,* 4 *Pennewill,* 368, 55 *A.* 184, 64 *L. R. A.* 849, 103 *Am. St. Rep.* 122; *Security Trust & Safe Deposit Co. v. Ward,* 10 *Del. Ch.* 408, 93 *A.* 385; *Equitable Trust Co. v. Paschall, et al.,* 13 *Del. Ch.* 87, 115 *A.* 356; *Grant, et al., v. Mullen, et al.,* 15 *Del. Ch.* 174, 138 *A.* 613; *Wilmington Trust Co. v. Grier, et al.,* 19 *Del. Ch.* 34, 161 *A.* 921. An intention to execute the power by the will is so conclusively demonstrated by the foregoing, that it is not necessary to consider the further contention to the effect that an intent to execute the power is deducible from the ineffectiveness of the will's dispositions except as the power is deemed to have been executed.

The other points upon which instructions are sought are stated in paragraph seven of the bill. The foregoing answers those which are designated as (a) and (c) in said paragraph.

With respect to the point designated as (b) the executor and trustee will be instructed in accordance with what follows.

The general intent of the testatrix was that all of her individual property, if any remains after the settling of her estate, shall, together with the property subject to the power, go to Security Trust Company as trustee to be held

and administered by it under the testamentary trust provided for in the will. The office of trustee under the *inter vivos* instrument of 1891 heretofore held by that company is terminated except for accounting purposes, and the new office is conferred upon it by the will of testamentary trustee.

That is the general view. In harmony with it, the executor should resort first to the individual estate of the testatrix in settling the estate. If the personal property belonging to the testatrix individually is not sufficient to meet the costs and expenses of administration and to pay debts and legacies, resort should be had to the sole piece of real estate owned by the testatrix, *viz.*, the home at 510 West 14th Street in Wilmington, unless liquidation of the indebtedness to the bank out of the income from the trust fund agreeably to the bank's consent would make that course unnecessary. But as funeral expenses and costs of administration are assumed to be considerably in excess of the personal estate of $144.70, it is apparent that even if the bank should agree to be paid out of the trust income, the said parcel of real estate must be sold. The will in its sixth item authorizes the sale of the real estate if necessary for the purpose of settling the estate. If the personal property and real estate are insufficient for the purpose indicated, the conclusion is warranted that the appointive property may then be looked to for the deficiency. *Security Trust & Safe Deposit Co. v. Ward,* 10 *Del. Ch.* 408, 418, 93 *A.* 385.

What has just been said answers one branch of the inquiry under paragraph (b) of paragraph seven of the bill.

The other branch of inquiry under that heading relates to the item of the will reading as follows:

"Ninth: If either of my sons, William G. or John S. Crumlish, wish to live in said house, 510 W. 14th Street, he may, but so long as he resides there, he shall pay unto the other son not living there, one-half of the reasonable rental of the house, every month. Said

reasonable rental value shall be determined by Security Trust Company, and its decision shall be final."

The inquiry addressed to the court with respect to that item is as follows: if either son is permitted to live in the house, what provisions must be made for the payment of taxes, repairs, insurance, interest on the mortgage and other carrying charges and to whom should such payments and the payments of the rent mentioned in the will be made?

In view of the facts, these questions are at present moot, for it appears that the house must be sold. The entire individual estate of the testatrix, including the equity in 510 West 14th Street, has a value of about fourteen hundred dollars only, the debts and funeral expenses now probated exceed sixteen hundred dollars. Costs of administering the estate are to be added to that sum.

The bill asks for instructions upon the question of whether the bequest to the Bishop of the Roman Catholic Church of the Diocese of Delaware is a valid bequest. A stipulation has been filed by the parties in interest agreeing that the bequest be paid. It is therefore unnecessary for the court to consider the question. The decree should recite the stipulation and declare the legacy to be payable.

Let a decree be prepared accordingly.