**CENTRAL TRUST CO. v WATT et**

Common Pleas Court, Hamilton Co.

No. A-57290. Decided March 21, 1940.

Wm. J. Rielly, Cincinnati, for plaintiff.

John Watt, New Orleans, La., for defendant, Edna B. C. Watt.

468

Nichols, Morrill, Wood, Marx & Ginter, Cincinnati, for defendant, Dartmouth College.

Joseph S. Graydon, and Joseph H. Head, of Cincinnati, for defendant, Berea College.

## OPINION

By SCHWAB, J.

This is an action brought by the plaintiff under the following state of facts:

On June 22, 1910, the plaintiff entered into an agreement in writing with John S. Conner, now deceased, under the provisions of which John S. Conner assigned, transferred and delivered to the plaintiff the corporate stocks and securities enumerated in the agreement, to be held by the plaintiff in trust for the uses and purposes therein set forth. John S. Conner died on July 11, 1911, and Levietta B. Conner, his wife, died on November 23, 1930. The defendant, Edna B. C. Watt, is the daughter of John S. Conner, and in the trust agreement is named as the beneficiary of an annuity of $1000, to be paid to her for life out of the income of the trust. Under the provisions of the trust the net income therefrom was payable, and the plaintiff as trustee paid the same to John S. Conner during his life, and on his death there was payable, and the plaintiff did pay, and is now paying the same, to Edna B. C. Watt, daughter of John S. Conner, out of the income, in quarterly installments of $250.00 each, the sum of $1000 per annum. The balance of the net income from the trust was payable, and the plaintiff as trustee did pay the same, in quarterly installments to Levietta B. Conner, wife of John S. Conner, each year until her death.

John S. Conner provided in the trust agreement for the disposition, after the death of his wife, of the income over and above the annuity of $1000 to be paid to his daughter, as follows:

"Should my wife die before my daughter, (and my daughter then be receiving and continue to receive said annual sum of $1000 as aforesaid), then all the remainder of the net income, (above the aforesaid sum of $1000 to my daughter), shall thereafter (unless my daughter, in the meantime, should die, or forfeit her right to said sum of $1000). be held and paid out as follows. viz: The sum of One Thousand ($1000) Dollars annually shall be paid over to the ultimate beneficiary of the trust estate. as hereinafter created, for immediate use, year by year, for the purpose hereinafter specified, and the balance shall, from time to time and as rapidly as possible, be invested; and when said investments from said income together with the balance of the trust estate, not required for the raising of the $1000 annual income payments to my daughter, amount in market value to the sum of Fifty Thousand ($50,000) Dollars, then such payment of $1,000 annually to such beneficiary of the trust, and such investment of income shall cease, and this trust so far as it is applicable to said property of said value of $50,000, (unless the whole trust has been earlier terminated by the deaths of my wife and daughter, or by the death of my wife, and forfeiture of right and claim to said annual sum of $1000 by my daughter), shall at once cease and terminate; and then said Trust Company shall assign, transfer, make over, and deliver to said ultimate beneficary of the trust estate said $50,000 in market value of securities, the same thereafter to be held, invested, and used by said beneficiary as hereinafter stipulated; but such transfer of said $50,000 shall in no way affect the remainder of the trust fund and estate, and the trust connected therewith, and such remainder shall be held during the life of my daughter, (or until her forfeiture of her right to said $1000, if she should forfeit the same)."

The ultimate beneficiary of the annuity of $1000, and of the accumulation of the balance of the income from said

trust which John S. Conner directed be invested until it aggregated a capital fund of $50,000, referred to in the above provisions of the trust, has not as yet been determined, and can not be determined without the aid and direction of the court, for the reasons hereinafter set forth.

Clause 3 of the trust agreement provides as follows:

"After the death of my wife and also of my daughter, (if my daughter shares in the income as aforesaid), then this whole trust shall at once cease and terminate; and said Trust Company shall then transfer, make over, deliver and pay over all the securities of every kind then in its hands, and the accrued and collected net income thereon, to such Institution, Charity. Corporation, individual or Individuals, as I, in my lifetime, may in writing direct, which writing shall be addressed to and delivered to said Trust Company; or, if I should die before executing and delivering said writing, then, (having full confidence in the judgment of my wife, and knowing her full sympathy with my views in the matter), to such Institution, Charity, corporation, individual or individuals, as my said wife shall, before her death, designate in writing addressed to and delivered to said Trust Company.

"But in case both I and my wife should die before having so designated in writing the beneficiary of said property, then said Trust Company shall assign, transfer, make over, deliver and pay over all of said property to Dartmouth College of Hanover, New Hampshire, the same to be forever kept separate from other funds and property of said College, and to be known and designated as the 'John Sanborn Conner Fund', the income alone ever to be used, and that only in assisting worthy students to obtain their education at said College; and the students receiving such aid shall, or shall not repay the same, as soon as they reasonably are able so to do, as the college authorities in each case may determine."

On September 21, 1914, almost three years after the death of her husband, Levietta B. Conner addressed a communication and delivered same to the plaintiff herein, which reads as follows:

"Cincinnati, Ohio, September 21, 1914. The Central Trust & Safe Deposit Company, Trustee of the Fund established by John S. Conner.
Gentlemen:
In connection with the Trust created by John S. Conner (now deceased) dated the 22nd day of June A. D. 1910, with such modifications as have been made by the said John S. Conner, in his lifetime, and for the purpose of designating the ultimate beneficiary of said Trust, in accordance with his directions therein, that I should make such designation, I hereby designate the beneficiaries of said Trust to be in accordance with the express wishes of my deceased husband, John S. Conner, as set forth in the foregoing letter, which he addressed to me on December 24, 1910. I may make some changes in the students and persons who are to receive the benefit of the education provided for in the foregoing letter, but such modifications will be made by me, in writing and unless so made, these instructions shall be final.
Yours very truly,
Levietta B. Conner.
Witness: Philip Hinkle.

To this letter was appended a letter of John S. Conner to his wife under date of December 24, 1910, which reads as follows:

"Cincinnati, Ohio, December 24, 1910.
"Dear Etta:
As I may not be able to carry out or distinctly state in writing to The Central Trust Company and to you various

ideas that I have with respect to the ultimate beneficiary of the trust fund, and of certain wishes that I have as to Edna, I now dictate this letter to you, not as binding you in any way, but as a suggestion to you what my wishes are if you can conveniently carry them out, and you deem them best at the time you do attempt to carry them out.

First—as to the ultimate beneficiary of the trust fund. You know how much time and thought I have given to the subject and how I studied upon the matter when I was in Hanover. My conclusion, in so far as I can designate, and I do designate as my wish that Dartmouth College should be the ultimate beneficiary of the trust fund. I want the fund to be held intact so far as the principal is concerned, but the income is to be paid out for the purpose of helping worthy, industrious students, precedence being given.

1st. To students of the Thayer Scientific School.

2nd. To students of the Scientific Department of the College formerly known as the Chandler school.

3rd. To such of the students of the College proper as are expecting to go into business enterprises, and thereby I mean enterprises other than professional life.

4th. To those who are going into professional life, preference being given

1st. To those who expect to be teachers.

2nd. To those who expect to be lawyers.

3rd. To those who expect to be physicians.

4th. To those who expect to be clergymen.

It is my wish that beneficiaries shall give notes at low rates of interest payable at such times as the College authorities deem proper, and while I want no student to be hampered by this indebtedness, I want every recipient, that is able to, to pay back the amount received by him at a low rate of interest and at such time as the College authorities deem proper, and while I want be harassed in the matter of the re-

payment if he honestly and fairly can not repay it.

John S. Conner."

Subsequently, on or about March 31, 1927, Levietta B. Conner delivered to the plaintiff a paper writing bearing date of March 31, 1927, which reads as follows:

"The Central Trust Co.
Cincinnati, Ohio.
Gentlemen:

Under Item 3 of the Trust Agreement executed by my late husband, John S. Conner, on June 22, 1910, and my acquiescence therein on the same paper of like date, Judge Conner directs that on certain conditions the trust shall cease and the Trustee shall transfer the entire securities of the trust to such institution, charity, corporation, individual or individuals, as he in his lifetime may in writing direct, and then says: 'or if I should die before executing and delivering said writing, then (having full confidence in the judgment of my wife and knowing her full sympathy with my views in the matter) to such institution, charity, corporation, individual or individuals as my wife shall before her death designate in a writing addressed to and delivered to said Trustee. But in case both I and my wife should die before having so designated in writing the beneficiary of said property, then the Trustee shall assign, transfer and deliver and pay over all of said property to Dartmouth College of Hanover, New Hampshire,' etc.

On September 21, 1914, I delivered to the Trustee my acceptance of the beneficiary designated in a letter dated December 24, 1910, and addressed to me by my husband John S. Conner, in which he again designates Dartmouth College as the ultimate beneficiary, but he also says: 'This letter is not binding on you in any way, but as a suggestion to you what my wishes are if you can conveniently carry them out, and you deem them best at the time you do attempt to carry them out.'

In my acceptance of this designation of Dartmouth College, I reserved the

right to make changes in the students and persons who are to receive the benefit of the education provided in the foregoing letter but such modifications will be made by me in writing, and when so made, these instructions shall be final.

Since 1914 I have had long years to study over the problem of the ultimate beneficiary of the trust. I know that my husband yielded to my wishes in naming Dartmouth College instead of Berea College, which was his first choice.

In view of the greater good to the greater number to be obtained by changing the designation from Dartmouth College to Berea College, Kentucky, and knowing that such change carries out my husband's original wish, I desire to change such designation made by my husband in his Trust Agreement of June 22, 1910, and his letter to me of Dec. 24, 1910, and my acceptance of Sept. 24, 1914, and in conformity with my husband's real wish I do now herewith name **Berea College**, of Kentucky as the ultimate beneficiary of the trust.

Levietta B. Conner.

Witnesses:
 Matilda Sanford
 Carl Case."

"This paper designating Berea College, Ky., instead of Dartmouth College, Hanover, N. H. was originally drawn in February, 1924, tho' not transcribed and delivered until March 31, 1927. This fact will be proved by a typed copy of original which will be found either in my safe deposit box or in care of Mr. V. G. Boeh, Jr.

Levietta B. Conner.
March 31, 1927."

Plaintiff is in doubt as to whether Levietta B. Conner at the time she delivered to it the second paper writing, bearing date of March 31st, 1927, had the right to change the beneficiary designated by donor in the first paper writing, bearing date of December 24, 1910, in which she acquiesced, and can not safely proceed with the distribution of the capital fund, made up of income accumulated since the death of Levietta B. Conner, in the manner directed by the donor John S. Conner, without the judgment and direction of the court.

Wherefore, the plaintiff prays the judgment of the court with respect to its duties, rights and powers in the administration and distribution of said trust estate, and asks to be enlightened as to whether or not the paper writing dated December 24, 1910, signed by donor, effected the purpose of Clause 3 of the trust agreement, and second, if the paper writing dated December 24, 1910, did not effect said purpose, did the statements therein effect a modification of the trust agreement, and third, if the paper writing dated December 24, 1910, did effect such modification, was it effective to withdraw donor's right of selection, and give his wife power of appointment of the ultimate beneficiary of said trust; and fourth, if said Levietta B. Conner had such power of appointment, was the second paper writing, bearing date of March 31, 1927, signed and delivered by her to the plaintiff, a valid exercise of such power?

The defendant, the Trustees of Dartmouth College, commonly known as Dartmouth College, says that it is, and at all times mentioned in the petition was, a corporation created by Royal Charter and existing under the laws of the state of New Hampshire.

Defendant admits that on June 22, 1910, the plaintiff entered into an agreement in writing with John S. Conner, and that the copy attached to the plaintiff's petition, and marked Exhibit A, is a true and correct copy of said agreement.

It further admits that the copy of the letter of John S. Conner of December 24, 1910, addressed to his wife, is a true and correct copy of that letter.

The defendant further admits that the copy of the letter set forth in plaintiff's petition of September 21, 1914, of Levietta B. Conner, and addressed to the Central Trust Company, is a true and correct copy of that letter.

The defendant neither admits nor denies that Levietta B. Conner delivered to the plaintiff, The Central Trust Company, on March 31, 1927, the letter, copy of which is set forth in the plaintiff's petition, and leaves the plaintiff to its proofs thereof.

Wherefore, the defendant prays that it may be decreed to be the ultimate beneficiary under the trust of John S. Conner.

Berea College likewise, answering the petition, admits the allegations of the petition, and says that by a true construction of the trust agreement and paper writings set forth in the petition the defendant Berea College is the ultimate beneficiary of the trust estate.

Edna B. C. Watt has filed her answer and sets forth that she is the daughter of John S. Conner, who is mentioned as an annuitant in the trust agreement entered into by him on June 22, 1910.

She further sets forth that she is now receiving, pursuant to this agreement, the annual sum of $1000; wherefore she joins in the prayer of the plaintiff for the judgment and direction of the court with respect to the duties, rights and powers of the plaintiff as trustee, and further prays that her interest as an annuitant thereunder be protected.

Briefs have been filed by counsel for the defendants, Dartmouth College and Berea College.

Under Item 3 of the trust agreement the donor, John S. Conner, provided for the manner in which the ultimate beneficiary of the $50,000 fund was to be named, by directing that it be paid "to such institution, charity, corporation, individual or individuals as I, in my lifetime, may in writing direct, which writing shall be addressed to said Trust Company; or if I should die before executing and delivering said writing, then, having full confidence in the judgment of my wife, knowing her full sympathy with my views in the matter to such institution, charity, corporation, individual or individuals, as my said wife shall, before her death, designate in a writing addressed to and delivered to said Trust Company."

The court has no difficulty in answering the first question propounded by plaintiff's petition; that the letter of December 24, 1910, signed by John S. Conner, and addressed to "Dear Etta", did not effect the purpose of Clause 3 of the trust agreement, except as it became a part of Mrs. Conner's letter of September 21, 1914, for the reason that the letter was not addressed to the plaintiff herein, and for the same reason the court is of the opinion that such letter did not effect a modification of said trust agreement; and for the same reason the court answers the third question propounded in the petition in the negative.

The fourth and last question is the question that raises the real point at issue in this case, and that is, did the paper writing bearing the date of March 31, 1927, constitute a valid exercise of the power of appointment as set forth in the trust agreement.

To determine that question the court must consider the letter of September 21, 1914, of Levietta B. Conner, addressed to the Trust company, in which she attached the letter of John S. Conner to her, under date of December 24, 1910, in which she acquiesced in the suggestion of her husband and states that "I hereby designate the beneficiary of said trust to be in accordance with the express wish of my deceased husband, John S. Conner, as set forth in the foregoing letter, which he addressed to me on December 24, 1910."

Following this language in this letter appears the following:

"I may make some changes in the students and persons who are to receive the benefit of the education provided for in the foregoing letter, but such modifications will be made by me, in writing and unless so made, these instructions shall be final."

John S. Conner, by the terms of this trust agreement, created a power of appointment to be exercised by his wife during her lifetime, and the two letters addressed to the plaintiff herein, one

under date of September 21. 1914. and the other under date of March 31, 1927, thirteen years later, are the only two acts of Levietta B. Conner, wife of John S. Conner, in her attempt to exercise this power.

It is the contention of counsel for Dartmouth College that the first of these acts, to-wit, the letter of September 21, 1914, designated the ultimate beneficiary in accordance with the terms of the trust agreement. and therefore completely exhausted the power of appointment.

Counsel argue that John S Conner in the trust agreement reserved to himself and to his wife only one right—the power to designate an ultimate beneficiary. Therefore, his attempt to prescribe the manner in which the corpus of the estate was to be used as outlined in his letter of December 24, 1910. to his wife, and her acquiescence. was in excess of the power reserved and should be disregarded. It is asserted that upon this reasoning Dartmouth College was appointed the ultimate beneficiary and by this act the power of appointment was exhausted.

If this reasoning is correct as to limitation of this power of appointment, it may be argued with equal force that a reasonable interpretation of provisions of the letter of December 24, 1910. is that Mrs. Conner intended to create a trust naming Dartmouth as the trustee and the students thereof as the beneficiaries of the trust; that it was beyond her power to do either, and therefore her letter of September 21, 1914, was an invalid exercise of her power of appointment.

It is the contention of counsel for Berea College, named as the beneficiary of this fund under the second act of Mrs. Conner, in her letter of March 31, 1927, addressed to the plaintiff, that the act of Mrs. Conner in her letter of September 21, 1914, did not exhaust her power of appointment, but reserved to herself the right to revoke the appoint-

ment therein made, and that this power to revoke was fully exercised in her letter of March 31, 1927.

The legal effect, therefore. of the letter of September 21, 1914, will control the decision of this case, and brings into review the law with reference to the exercise of powers of appointment.

Counsel for the defendants in this case have filed exhaustive briefs on this question, and the court has conducted an independent search of the authorities, and as a result thereof no reported cases in Ohio directly in point have been found. This therefore is a question of first impression, and the court's attention has been directed to the common law of England, where the powers of appointment have been extensively employed and exercised in connection with real property and a number of rules have grown up and have become a part of the common law as a result of such practice. One of these rules is as follows:

"Where the donor confers on the donee the power to appoint with the right to revoke the initial or several successive appointments, and make new appointments; nevertheless. if the donee exercises the right by making an appointment in the manner provided in the will or trust instrument, without reserving the right to revoke, he may not thereafter revoke and make a new appointment."

Another rule is as follows:

"If the donor merely gives to the donee the power to appoint. without expressly authorizing him to revoke an original appointment and make a new one; nevertheless, if the donee, in making an appointment, does reserve the right to revoke, he may thereafter exercise such right and make a new appointment. The theory underlying this rule is that if the donee makes an

appointment, and at the same time states that he reserves the right to revoke, it is considered that he has not exercised the power at all, and that its future exercise is open to him."

These rules have found favor in a number of jurisdictions throughout the country. It is set forth in 49 Corpus Juris, page 1307, Sec. 159, as follows:

"Where a power in any mode, and to any extent whatsoever, has been exercised revocably, and the revocable appointment made under it has been revoked, without being operated on or effectuated, the power is generally of the same force, and exercisable in the same manner, as if the revoked appointment had not existed; and a power is not necessarily exhausted by a revocable act, although otherwise exercising the power to the utmost, any more than by a conditional act, or by an act of merely partial execution."

Counsel for Dartmouth College urge upon the court a consideration of the case of Wilmington Trust Co. v Wilmington Trust Co., 180 Atl. 597, touching upon the question of reservation of power to revoke. In that case the trust agreement provided as follows:

"Upon the death of each of my said children excepting Robert Newsome Donner, but not sooner than ten years from this date, unless my daughter, Elizabeth Browning Donner, shall have died prior to that time or unless a majority of the adult beneficiaries hereunder consent in writing and so advise the trustee, the trust herein created, shall, except as hereinafter provided, cease and be at an end to the extent of the deceased child's interest or share in the trust fund then subject thereto, that is, the share of the principal of the trust fund from which his or her income has been derived, which share and any and all property and securities held under the trust to produce the income for such child shall be paid, transferred, conveyed and delivered to such

lawful child or children, or other lawful lineal descendants of the donor then surviving, and in such proportions and subject to such lawful conditions, as such deceased child shall appoint and designate by a last will and testament, or other instrument, duly executed, sufficient for such purpose; and in the absence of such designation or appointment such share shall at the time so fixed go to the lawful child or children."

One of the children, Joseph W. Donner, on October 9, 1929, by an instrument under seal exercised his power of appointment as follows:

"I * * * do hereby appoint and designate my two children, Joseph W. Donner, Jr. and Carroll E. Donner, to receive all my interest and share in the said trust fund, that is the share of the principal of the trust from which my income thereunder has been derived, including the seperate trust fund thereunder, * * * "

He died a month later, on November 9, 1929, leaving a will which made no reference to the power of appointment. He possessed property in his own right upon which the will could operate.

The court held that the instrument of October 9, 1929, was a fixed and conclusive act of appointment in which no right of revocation was reserved.

It is difficult to see how the court under this statement of facts could reach any conclusion other than as above stated for the language employed in executing the power of appointment nowhere gave the slightest suggestion of any reservation of power to revoke.

The court is of the opinion that John S. Conner reserved to himself and to his wife the right to name the beneficiary or beneficiaries of the fund to be created under the terms of the trust agreement. A careful reading of the

letter of September 21, 1914. to which was attached and made a part thereof John S. Conner's letter of December 24, 1910, to his wife, shows that it named the students of Dartmouth College as the ultimate beneficiaries of the fund, in spite of the fact that the language employed therein described Dartmouth College as the ultimate beneficiary, for it named the students as "beneficiaries" and provided that they give notes at low rates of interest. Dartmouth College was thus the conduit through which the fund was to flow to the ultimate beneficiaries,—its students.

Coming now to construe the words "I may make some changes in the students and persons who are to receive the benefit of the education provided for in the foregoing letter, but such modification will be made by me, in writing, and unless so made, these instructions shall be final."

The court is of the opinion that no ritual of words need be employed to reserve the power to revoke an appointment. The language above quoted indicates clearly Mrs. Conner was reserving to herself the right to revoke the appointments of the various classes of students at Dartmouth.

In the case of **Kiplinger v Armstrong, et, 34 Oh Ap 348** the court held:

"1. A power of disposition given by a will, to be exercised by the donee of the power at any time before his death, may be exercised by the donee by his will.

2. An intention to exercise a testamentary power of disposition will not be presumed.

3. An intention to exercise a testamentary power of disposition may be shown by (a) referring to the power in the will; (b) by making a specific disposition of the subject matter of the power; or (c) by showing that the will will not have any operation except as an execution of the power."

On page 351 the court said in its opinion:

"It is well settled that the answer to the question whether a provision in a will is in execution of a power depends upon the intention of the donee of the power at the time of the making of his will."

Following the reasoning of this decision, the court finds that Mrs. Conner in her letter of September █ ber 21, 1914, not only intended to refrain from a full exercise of her power of appointment, but actually withheld a portion of such power, by reserving the power to revoke.

Reaching this conclusion. the next question is what was the legal effect of this reservation of power. Did it limit Mrs. Conner to making changes in beneficiaries to the student body of Dartmouth, or did it give her the right to revoke the appointment made and make a new appointment?

The rule as announced in 49 Corpus Juris, page 1307, Sec. 159, above quoted furnishes the guide to the solution of this problem.

In the case of Thomas J. Saunders v Bridget Evans et, in the House of Lords in England in 1861, reported in Vol. XI, House of Lords, page 611, it was held:

"If there is an original power of appointment, and then an execution of that power, reserving a power only to revoke followed by a revocation, the original power remains unaffected. And if in the first instrument executing the original power, there is reserved a power of revocation and of new appointment, such instrument does not constitute a new settlement destructive of the first, nor is the orignal power thereby exhausted and at an end, but, upon the revocation of such instrument, exists in full force.

If there is a power of appointment to be exercised by deed or will, and the first instrument executing the power is a deed which contains the reservation of a power to revoke and to appoint anew by deed, and then there is a sim-

ple revocation of this instrument the original power, on such revocation, being in full force, there may be a valid execution of it by will as well as by deed.

In 1794, an estate in land was made the subject of a settlement, under which two persons then about to be married were to have life interests, remainder to the use of such person for such estate, etc. as A., the intended wife, by any deed, with or without power of revocation, attested by two or more witnesses, or by will attested by three witnesses, should from time to time, and as often as she should think fit, appoint. In 1830 A. by deed exercised this power, and the deed contained a power, by deed, to revoke and to make a new appointment. In 1833, a deed revoking that of 1830, and newly appointing, and also reserving power, by deed, to revoke and newly appoint, was executed. This course was exactly repeated in 1835 by a deed of that date. In 1836, A. executed another deed, simply revoking that of 1835. In 1848, by a will reciting the power of 1794, A. declared the uses of the estate:

**Held,** that the deed of 1830 had not exhausted the power of 1794 and substituted a new power for it, to be executed only by deed; and that consequently on the revocation, in 1836, of the last preceding deed, the power of 1794 was capable of being exercised by A. either by deed or will."

In the matter of the Estate of Sir J. A. R. Gore-Booth, in 1908, reported in Vol. 1, Law Reports, Ireland. Chancery Division, Land Commission. page 387, at page 389, the court says:

"It appears to be well settled, as laid down by Farwell on Powers, that a power of revocation and new appointment may be reserved by an instrument executing a power although such a reservation is not expressly authorized by the instrument creating the power, that the formalities to accompany the revocation and new appointment need not be the same as those which were made requisite to the original execution, and that those who can make an absolute appointment can make a qualified one."

There is no evidence before the court that Dartmouth College or any of its students have changed their position by virtue of their appointment in the letter of September 21, 1914.

It seems to this court that where there has been a reservation of the power to revoke, in any fashion, the power itself has not been exhausted, and where the beneficiaries named in the partially executed power have not been damaged or changed their position by reason thereof, the donee of the power has the right upon revocation to the full exercise of such power of appointment.

This court will therefore hold that the legal effect of the reservation of her power to revoke the appointment made in the letter of September 21, 1914, upon its revocation by the letter of March 31, 1927, left Mrs. Conner in full possession of the original power of appointment and that this power was fully and completely exercised by the appointment of Berea College in the same letter of March 31, 1927.

Therefore, in answer to the last question propounded by plaintiff's petition, the court will answer that the letter set forth in the plaintiff's petition, bearing date of March 31, 1927, was a valid exercise of the power of appointment, pursuant to the terms of the trust agreement, and that as such letter designates Berea College, Kentucky. as the ultimate beneficiary of this fund, it becomes the duty of the plaintiff, under the provisions of the trust agreement, to pay the fund in question to Berea College.